# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD FARSHAD ABDOLLAH NIA, *Individually, and on Behalf of All Others Similarly Situated*, <br><br>                                Plaintiff, <br><br> v. <br><br> BANK OF AMERICA, N.A., <br><br>                                Defendant. | Case No. 21-cv-01799-BAS-BGS <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> **(ECF No. 12)** |

Plaintiff Mohammed Farshad Abdollah Nia filed his Complaint in this action in the Superior Court of California, County of San Diego. (Compl., Ex. A to Notice of Removal, ECF No. 1.) Defendant Bank of America, N.A. ("BANA") removed the case to this Court (Notice of Removal) and then moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Mot., ECF No. 12). Plaintiff opposed the motion (Opp'n, ECF No. 15), and BANA replied (Reply, ECF No. 16). The Court finds BANA's motion to dismiss suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). Having considered the parties' submissions and arguments and for the reasons stated below, the Court **DENIES** BANA's motion to dismiss. (Mot., ECF No. 12.)

I. **FACTUAL ALLEGATIONS**

Plaintiff, an immigrant from Iran, is a permanent resident of the United States who resides in San Diego, California. (Compl. ¶ 18.) Near the end of 2015, he opened a credit account with BANA, a national banking association with its principal place of business in Charlotte, North Carolina. (*Id.* ¶¶ 21, 24.) Plaintiff used this credit account for purchases at restaurants and grocery stores and accrued reward points when he used his credit card. (*Id.* ¶ 24.)

Since Plaintiff is an Iranian citizen and Iran is sanctioned by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), BANA periodically requested proof of Plaintiff's residence in the United States to maintain his account. (*Id.* ¶ 26.) BANA required these documents to ensure its compliance with OFAC regulations. (*Id.*) When Plaintiff first opened his credit account, and for multiple years thereafter, he periodically proved his U.S. residency to BANA by submitting his driver's license. (*Id.* ¶ 25.) Plaintiff also understood that he could provide any of four "Permanent Residency Documents" to BANA to prove his U.S. residence, including a Form I-797C (a form issued by United States Citizenship and Immigration Services). (*Id.* ¶ 26.)

In May of 2019, BANA requested Plaintiff's updated proof of residency documentation. (*Id.* ¶ 28.) On May 17, 2019, Plaintiff sent BANA his Form I-797C, which had been issued on May 7, 2019. (*Id.*) Approximately three months later, on August 26, 2019, BANA once again requested that Plaintiff submit an updated proof of residency. (*Id.* ¶ 29.) BANA did not acknowledge Plaintiff's May 2019 submission. (*Id.*) Instead, BANA informed Plaintiff that "the temporary documentation you provided will soon expire," and requested that he submit updated documents by October 17, 2019. (*Id.*) The letter also warned that his account would be restricted if he failed to provide documentation by September 25, 2019. (*Id.*) Finally, the letter set forth several acceptable documents to prove his residency including a Form I-797C. (*Id.*) Plaintiff resubmitted his Form I-797C through BANA's website. (*Id.* ¶ 30.)

On September 17, 2019, BANA informed Plaintiff that his residency documentation "was not sufficient" because Plaintiff had provided an "Unapproved Document." (*Id.* ¶ 31.) The letter from BANA, however, listed the Form I-797C as "Acceptable Documentation for Proving your Current Residence." (*Id.* ¶ 32.) The letter further informed Plaintiff that he needed to act immediately to avoid restriction of his account. (*Id.* ¶ 33.) Since Plaintiff had previously submitted his Form I-797C, he believed that BANA's letter was sent in error. (*Id.* ¶ 34.)

On approximately September 30, 2019, Plaintiff's account was restricted. (*Id.* ¶ 35.) On approximately October 21, 2019, Plaintiff spoke with a BANA customer representative by phone. (*Id.* ¶ 36.) The representative said that BANA could not accept Plaintiff's Form I-797C because more than six months had elapsed from the date of its issue—which Plaintiff believed was contradictory to BANA's characterization of a Form I-797C as a "Permanent Residency Document." (*Id.* ¶ 36). Plaintiff informed the representative that he expected to receive his Green Card in the near future and that he would promptly send it once he received it. (*Id.*) The BANA representative agreed that the Green Card would be sufficient to maintain Plaintiff's account. (*Id.*)

Later that day, or shortly thereafter, BANA closed Plaintiff's account. (*Id.* ¶ 37.) The closure occurred less than six months since Plaintiff's Form I-797C was issued. (*Id.* ¶ 45.) Plaintiff spoke to a BANA representative once again. (*Id.*) The representative "refused to clarify the policy pursuant to which it closed [Plaintiff's] account" and told the Plaintiff something to the effect of "we don't have to do business with you." (*Id.* ¶ 38.) The representative also acknowledged that BANA did not send a notice of closure to the Plaintiff and refused to send a notice or other written explanation for the account closure. (*Id.*) BANA never provided any written notice or explanation regarding the closure of his account, after the account was closed. (*Id.* ¶ 43.)

As a result of the closure, Plaintiff lost reward points accrued on his credit card account. (*Id.* ¶ 39.) He also suffered adverse effects to his credit. (*Id.* ¶ 40.) Plaintiff

estimates that he spent ten to twenty hours attempting to remedy the issue with BANA. (*Id.* ¶ 41.)

Plaintiff alleges that his account was cancelled because of BANA's practice of discriminating against persons of Iranian or Middle Eastern descent by closing or threatening to close their accounts for illegitimate reasons. (*Id.* ¶ 47.) Plaintiff supports his allegations with citations to various news articles (*id.* ¶¶ 48–54), public commentary about practices at American banks (*id.* ¶¶ 55–56), complaints lodged against BANA with the Consumer Financial Protection Bureau ("CFPB") and the National Iranian American Council ("NIAC") (*id.* ¶¶ 57, 59), a letter from the NIAC to BANA concerning account closures (*id.* ¶ 58), social media posts of complaints related to BANA's practices (*id.* ¶ 60), and a letter from a United States Senator to BANA regarding its practices (*id.* ¶ 61).

## II.   LEGAL STANDARD

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *See Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha*

*Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III. ANALYSIS

### A. Plaintiff's Equal Credit Opportunity Act Claim

The Equal Credit Opportunity Act ("ECOA") prohibits discrimination by any creditor against an applicant on the basis of race, color, religion, national origin, sex, marital status, or age. 15 U.S.C. § 1691(a); *Brothers v. First Leasing*, 724 F.2d 789, 791 (9th Cir. 1984). It applies to all credit transactions between creditors and applicants and precludes creditors from (1) discriminating against applicants on the basis of their membership in a protected class, or (2) failing to notify applicants of an adverse action in accordance with the statutory requirements of the ECOA. 15 U.S.C. § 1691(d). Other courts within the Ninth Circuit have recognized that the ECOA's notice requirement is distinct from the prohibition against discrimination in lending. *E.g.*, *Vasquez v. Bank of Am.*, No. 13-cv-02902-JST, 2013 WL 6001924, at *11 (N.D. Cal. 2013).

Plaintiff alleges that BANA violated both the notice and antidiscrimination provisions of the ECOA. (Compl. ¶¶ 76–99.) BANA contends that Plaintiff's allegations fail to state a claim for relief because (i) Plaintiff is not an "applicant" under ECOA; (ii) Plaintiff did not sufficiently allege a claim for discrimination; and (iii) BANA did not take an "adverse action" against Plaintiff. (Mot. 5–6.)

### 1. "Applicant" Under ECOA

For purposes of ECOA, an "applicant" means "any person who applies to a creditor[1] directly for an extension, renewal, or continuation of credit, or applies to a

---

[1] A "creditor" is "any person who regularly extends, renews, or continues credit . . . ." 15 U.S.C. § 1691a(e). BANA does not contest that it is a creditor under the statute.

creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). Both parties agree that the statutory definition of applicant is unambiguous. However, Plaintiff contends that it unambiguously includes him (Opp'n 10–11), and BANA contends the opposite (Mot. 6–7; Reply 1–4). If the Court concludes that the definition is ambiguous, Plaintiff argues that the CFPB regulatory definition applies and should be granted deference. (Opp'n 10–11.)

The Court agrees with both parties that the statutory definition is unambiguous but finds neither parties' reasoning persuasive. Plaintiff asks the Court to adopt an interpretation of the term "applicant" that includes all persons who receive credit, merely because they at one time applied for credit.[2] Plaintiff's interpretation gives no weight to the term "applicant" and suggests that a person remains an applicant even after receiving the credit for which he or she applied, which is nonsensical.[3] Contrary to Plaintiff's argument, the Court finds that the legislature's use of the term "applicant" by definition limits the statute's applicability to "persons who are still in the process of applying." (Opp'n. 10.) As BANA points out, other courts have found that "existing account holders […] aren't applicants within the plain meaning of the ECOA because they weren't applying for an extension, renewal, or continuation of [their] existing credit when the alleged violation […] occurred[.]" *Fralish v. Bank of Am., N.A.*, No. 3:20-CV-418 RLM-MGG, 2021 WL 4453735, at *3 (N.D. Ind. Sept. 29, 2021), *appeal dismissed*, No. 21-2846, 2022 WL 1089194 (7th Cir. Jan. 28, 2022). Like the court in *Fralish*, this Court finds that a

---

[2] Plaintiff's reading is belied by the second part of the definition of "applicant," which encompasses individuals who apply "indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C § 1691a(b). By definition then, individuals merely using their existing credit plan do not count as applicants, unless and until they "exceed[] their previously established credit limit" and therefore indirectly apply for additional credit. *See id.*

[3] The Ninth Circuit case cited by Plaintiff in support of his broad interpretation of "applicant" did not consider the issue of who counts as an "applicant" within the meaning of the ECOA, and there is no indication that the defendant contested the plaintiff's status as an applicant. *See Schlegel v. Wells Fargo Bank, NA*, 720 F. 3d 1204 (9th Cir. 2013). Thus, the same issue was not decided by the court in *Schlegel*.

person who has received the credit for which he applied no longer qualifies as an "applicant" for that credit within the meaning of the ECOA.

However, the statute is also clear that "applicant" includes credit-recipients who initiate a subsequent application to their creditor for a "continuation of credit." *Tewinkle v. Cap. One, N.A.*, No. 19-CV-1002-V, 2019 WL 8918731, at *5 (W.D.N.Y. Dec. 11, 2019), *report and recommendation adopted*, No. 19-CV-1002-JLS-HBS, 2020 WL 2812519 (W.D.N.Y. May 29, 2020) ("The statute calls for plaintiff to seek credit[—]a new request, an extension of existing or additional credit or resisting termination of credit[.]"). For this reason, the Court is not convinced by BANA's assertion that Plaintiff cannot qualify as an "applicant" within the meaning of the ECOA. Here, Plaintiff "opened a credit account with Defendant near the end of 2015" and held the account with no apparent issues until May of 2019. (Compl. ¶¶ 24–28.) Pursuant to BANA's procedures to verify Plaintiff's residency and continue his credit, Plaintiff had to submit periodic documentation. (*Id*.) In other words, every so often Plaintiff "applied" to BANA for a continuation of credit by providing proof of residency. Thus, viewing the facts most favorably to Plaintiff, the Court finds that because he attempted to "appl[y] . . . for . . . continuation of credit," which resulted in BANA's restriction and ultimate cancellation of his account, Plaintiff sufficiently pled that he was an "applicant" within the meaning of 15 U.S.C. § 1691a(b).

### 2.   Discrimination Under ECOA

Plaintiff contends that pleading a prima facie case is sufficient but not necessary to make out his claim of ECOA discrimination and argues that the prima facie case consists of the following elements: "(1) membership in a protected class; (2) applicant status; (3) qualification for credit; and (4) denial or revocation of credit despite being qualified." (Opp'n 14.) Plaintiff argues that "although not required to, he has pled a prima facie case" of ECOA discrimination by alleging his Iranian national origin, status as an applicant, qualification for credit, and revocation of his credit by BANA." (*Id*. at 14–15.) Noticeably

absent from Plaintiff's articulation of the pleading standard for ECOA discrimination, however, is any requirement to allege actual discrimination.

District courts have grappled with the pleading standard to apply in ECOA discrimination cases, and the Ninth Circuit has not yet weighed in. The four-element prima facie case relied on by Plaintiff comes from the 2009 case, *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009) (citing *Chiang v. Veneman*, 385 F. 3d 256, 259 (3rd Cir. 2004)). (Opp'n 14–15.) *Hafiz* set forth a pleading standard for ECOA discrimination that merely adopts the prima facie case applied by the Third Circuit in *Chiang*. Pleadings, however, "should be judged by the statutory elements of [the] claim rather than the structure of the prima facie case." *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 980 (D. Or. 2016) (citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997)). *Egbukichi* found, "the four-element prima facie case cited in *Hafiz* is not the appropriate pleading requirement on a motion to dismiss because it does not necessarily require allegations of discrimination 'on the basis of race,'" which is a clear element required by the ECOA. *Id.* (citing 15 U.S.C. § 1691(a)(1)) ("It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . *on the basis of race* . . ." (emphasis added)). This Court agrees with *Egbukichi* that to state a claim for violation of the ECOA, a plaintiff must allege facts that plausibly suggest: "(1) the plaintiff was a member of a protected class; (2) the plaintiff applied for credit from defendants; and (3) the plaintiff was denied credit on the basis of his or her protected class." *Id*.

Plaintiff adequately alleges the first two elements of the *Egbukichi* test sufficient to state a claim of ECOA Discrimination at the pleading stage. First, Plaintiff alleges that he is an individual of Iranian nation origin—a protected class. (Compl. ¶¶ 1, 6, 12, 18.) Second, as previously discussed, Plaintiff sufficiently alleged that he is an "applicant" under 15 U.S.C. § 1691a(b).

With respect to the third element—denial of credit because of his protected class— the factual allegations require further consideration. In support of Plaintiff's position that

BANA's conduct was rooted in discrimination, he set forth the following facts. First, Plaintiff alleged that BANA informed him that a Form I-797C was an acceptable "Permanent Residency Document," but BANA inexplicably failed to accept his Form I-797C on two occasions. (*Id.* ¶¶ 26–32.) Second, he alleged that a BANA representative indicated that his forthcoming Green Card would suffice to reinstate his account, but his account was closed shortly thereafter. (*Id.* ¶¶ 36–37.) Third, Plaintiff alleges that a BANA representative suggested that BANA had no obligation to do business with him and refused to explain or provide notice regarding the restriction and closure of his account. (*Id.* ¶ 38.) Finally, Plaintiff alleges that BANA has a practice of discriminating against Iranian and Middle Eastern individuals as evidenced by multiple consumer complaints, news sources, and social media posts, set forth in detail in his Complaint. (*Id.* ¶¶ 47–62.) In sum, Plaintiff alleges that BANA placed confusing and inconsistent obstacles in the way of Iranian and Middle Eastern individuals seeking credit, which resulted in the closure of Plaintiff's credit account—despite his attempts to submit acceptable proof of residency. (*See generally id.*)

As the Court in *Egbukichi* explained, "facts that might plausibly suggest that the denial of credit was because of or on the basis of an applicant's protected status may include . . . that the applicant was qualified to receive credit and was denied credit despite being qualified." 184 F. Supp. 3d at 980. Here, Plaintiff alleges that he proved his residency to BANA in a manner that BANA represented would be sufficient, and so he was qualified for a continuation of credit. Rather than accept his documentation, BANA denied it without clarification, failed to communicate effectively to ensure the account was not wrongly restricted, and ultimately cancelled the account. In addition to his factual account, Plaintiff alleges that "Defendant targeted [him] and imposed arbitrary and contradictory demands on him which he could not satisfy, and which ultimately led to the restriction and closure of his account, solely because of his race, religion, ancestry, citizenship, and/or immigration status." (Compl. ¶ 9.) *Cf. Egbukichi*, 184 F. Supp. 3d at 981 (finding Plaintiffs' allegations "insufficient to state a claim" for ECOA discrimination because the plaintiffs did not explicitly plead they were denied services "because of or on the basis of

their race"). Construing the complaint in the manner most favorable to Plaintiff, *see Manzarek*, 519 F.3d at 1031, the Court finds he pled facts that plausibly suggest BANA acted on the basis of Plaintiff's protected status, since he alleges he was denied credit despite being qualified and also alleges widespread unfair treatment of Middle Eastern individuals by BANA.

In sum, Plaintiff pled facts that support a plausible theory of ECOA discrimination: (1) that Plaintiff is of Iranian national origin; (2) that he applied for a continuation of credit; and (3) that he was denied the continuation of credit because of his protected status. *See Egbukichi*, 184 F. Supp. 3d at 981. Accordingly, Plaintiff's allegations are sufficient to state a claim for ECOA Discrimination at the motion to dismiss stage.

### 3. Existence of an "Adverse Action"

BANA contends that Plaintiff cannot plead a violation of ECOA's notice provision, 15 U.S.C. § 1691(d)(1), because it never took an "adverse action" against Plaintiff within the meaning of the ECOA, and because BANA's written notices of potential account restriction were sufficient to meet the ECOA statutory notice requirement. (Mot. 10.) An "adverse action" under ECOA is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C § 1691(d)(6). Furthermore, the ECOA requires that "within thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." *Id*. § 1691(d)(1). To satisfy the notice requirement, the ECOA specifies that the creditor must provide the applicant with a statement of reasons in writing setting forth the "specific reasons for the adverse action taken." *Id*. § 1691(d)(2–3).

First, the Court finds that Plaintiff adequately pled that BANA took an "adverse action" against him by terminating his account after he applied to continue it, which plainly constitutes a "denial or revocation of credit" within the meaning of the ECOA. (Compl. ¶¶ 36–37); *see* 15 U.S.C § 1691(d)(6). Plaintiff also pled facts to suggest that BANA failed to provide sufficient notice under the ECOA. For instance, Plaintiff pled that the

communications he received from BANA contained contradictory information regarding the proper documentation of his residence and that he never received any written statement from BANA with the specific reasons his account was terminated. (Compl. ¶¶ 28–39, 45–46.) BANA argues that its "written notices warning [Plaintiff] of potential account restriction in addition to its verbal warnings . . . appear to satisfy the ECOA's notice requirement," but BANA's argument asks the Court to adopt its view of the facts and disregards the ECOA's notice provisions requiring a writing outlining specific reasons for the adverse action.[4]  The Court declines to adopt BANA's view of the sufficiency of its notice at the pleading stage and concludes that Plaintiff sufficiently pled a claim that BANA violated the notice provisions of ECOA.

### B.  Plaintiff's § 1981 Discrimination Claim

Plaintiff asserts that BANA violated the Civil Rights Act of 1991, 42 U.S.C. § 1981, when it closed his account. (Compl. ¶¶ 100–07.)  BANA argues that Plaintiff's allegations fall short of stating a claim for intentional discrimination. (Mot. 10–13.)

In the non-employment contract context, to make out a claim of racial discrimination under 42 U.S.C. § 1981, a plaintiff must allege that (1) he is a member of a protected class, (2) he attempted to contract for certain services, and (3) he was denied the right to contract for those services. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006). BANA asserts that Plaintiff must also allege a fourth element, that the denial was "on the basis of race," (Mot. 11 (citing *Lindsey*, 447 F.3d at 1145)), but Plaintiff disagrees (Opp'n 16).  The Ninth Circuit has not adopted a definitive construction of a fourth element.  In *Lindsey*, the Ninth Circuit considered two options and applied the more restrictive option, requiring Plaintiff to show that the credit "services remained available to similarly-situated individuals who were not members of the plaintiff's protected class." 447 F.3d at 1145.

---

[4] BANA suggests that Plaintiff's failure to respond to one of its inquiries nullifies his claim of adverse action. (Mot. 10 n.6.)  The Court is unpersuaded.  The cases cited by BANA are not compelling because they concern plaintiffs who were delinquent in their debts, which is a statutory exception to "adverse action," and there are no allegations that Plaintiff was delinquent.

This Court applies the more restrictive construction of the fourth element here.[5] The Court also recognizes that Plaintiff has the burden of showing that his membership in a protected class was a but-for cause of his injury. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S.Ct. 1009, 1014–15 (2020) (finding that a plaintiff's burden to show causation exists at the motion to dismiss stage)).

BANA argues that its closure of Plaintiff's account was permissible since it was "rooted in its efforts to comply with OFAC regulations[.]" (*Id.*) Plaintiff alleges, however, that BANA inconsistently applied its policies when it closed his account despite his submission of a compliant Form I-797C. (Compl. ¶¶ 38, 43–45, 107.) Even if BANA's policy to require proof of residency from Iranian nationals is justified by its need to comply with OFAC regulations as BANA argues, Plaintiff alleges that BANA's cancellation of Plaintiff's account occurred only after he submitted the documentation BANA required for the "stated purpose" of complying with OFAC. (Compl. ¶¶ 26, 45–46.) The Court agrees with Plaintiff that BANA's arguments regarding OFAC compliance are insufficient at the motion to dismiss stage to overcome Plaintiff's allegations regarding discriminatory intent.

Second, BANA argues that it provided Plaintiff with "ample explanation" for restricting his account. (Mot. 11.) As previously discussed, however, Plaintiff sufficiently pled a claim for violation of the notice requirement of the ECOA. *See supra* III.A.3. Plaintiff argues that BANA's failure to comply with the notice provisions of ECOA reflects its intent to evade ECOA's discrimination protections. *See Schlegel*, 720 F.3d at 1210 (finding that the notice requirement effectuates ECOA's goal of preventing illegal discrimination). Plaintiff's allegations regarding BANA's failure to provide sufficient

---

[5] In *Lindsey*, the Ninth Circuit considered a split between the Sixth and Seventh Circuits on the proper construction of the fourth element. *Id.* The Ninth Circuit concluded that the plaintiff met the requirements for pleading a *prima facie* case under the Seventh Circuit's more restrictive construction, and thus, the Sixth Circuit's construction was also satisfied. *Id.* This Court likewise concludes that Plaintiff sufficiently pled a *prima facie* case when applying the more restrictive construction of the fourth element. Thus, the Court does not reach the issue of which construction should apply to § 1981 claims concerning the denial of services by a commercial establishment.

notice under the ECOA, therefore, support Plaintiff's position that BANA acted with discriminatory intent.

Finally, BANA asserts that there is no legitimate evidence of a pattern of discrimination against persons of Iranian or Middle Eastern origin. (Mot. 11–12.) In particular, BANA argues that Plaintiff's citations to news articles, complaints made to the CFPB and the NIAC, and social media posts are unreliable. (*Id.* at 12 n.7.) In particular, BANA points out that many of the consumer complaints that Plaintiff relies on do not identify the national origin or race of the complainant. (Compl. ¶¶ 57, 58, 60.) As Plaintiff pleads and BANA admits, BANA imposes requirements on individuals from OFAC sanctioned jurisdictions that it does not impose on other groups. Thus, BANA argues that the broadscale complaints of discrimination could reasonably reflect its permissible efforts to comply with OFAC regulations, rather than any illicit discrimination on the part of BANA. (Mot. 12.) Nevertheless, drawing reasonable inferences in Plaintiff's favor, the Court finds that at the pleading stage Plaintiff's allegations based on consumer complaints, articles, and social media posts support a plausible inference of intentional discrimination.

Plaintiff pled sufficient allegations to overcome his burden of showing that his membership in a protected class was a but-for cause of his alleged harm. Plaintiff alleged at least as many factual allegations—if not more—than plaintiffs in similar § 1981 cases that survived a motion to dismiss in this Circuit. *See, e.g.*, *Maystrenko v. Wells Fargo, N.A.*, No. 21-CV-00133-JD, 2021 WL 5232221 (N.D. Cal. Nov. 10, 2021); *Juarez v. Soc. Fin., Inc.*, No. 20-CV-03386-HSG, 2021 WL 1375868, at *1 (N.D. Cal. Apr. 12, 2021); *Perez v. Wells Fargo & Co.*, No. 17-CV-00454-MMC, 2017 WL 3314797 (N.D. Cal. Aug. 3, 2017).[6] The Court is not convinced by BANA's argument that plaintiff's allegations

---

[6] While the Court is sympathetic to BANA's argument that these cases are distinguishable because they do not involve a defendant's attempt at complying with OFAC regulations (Mot 5–6), a key aspect of Plaintiff's allegation is that BANA inconsistently applied its own OFAC compliance procedures as a pretext for discrimination. (Compl. ¶¶ 43–45.) Since BANA's failure to comply with its own procedures is the issue raised here, rather than the legitimacy of BANA's attempts to comply with OFAC regulations, the Court finds these cases to be persuasive.

simply amount to "something bad happen[ing]" to someone who happens to be a member of a protected class.[7] (Mot. 12.) Instead, the Court finds that Plaintiff has pled a claim for relief under § 1981, since he alleged facts that plausibly support that his treatment by the bank was the result of discrimination. *See supra* III.A.2.

### C. Plaintiff's California Unruh Act Claim

In his third and fourth causes of action, Plaintiff alleges that BANA violated California's Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51, 51.5, 52(a). The Unruh Act prohibits certain forms of discrimination against individuals by businesses. Cal. Civ. Code § 51(b) ("All persons within the jurisdiction of [California] are free and equal, and no matter what their . . . ancestry, national origin, . . . citizenship, . . . or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments . . . ."); *Id.* § 51.5 ("No business establishment . . . shall discriminate against, boycott or blacklist, or refuse to . . . contract with, sell to, or trade with any person in [California] on account of [that person's ancestry, national origin, citizenship, or immigration status] . . . ."). Any person aggrieved may bring a suit for damages and injunctive relief against the violator. *Id.* § 52.

Unruh Act claims include the following elements: (i) defendant denied plaintiff full and equal accommodations, advantages, facilities, privileges, or services; (ii) that a substantial motivating reason for defendant's conduct was plaintiff's membership in a protected class; (iii) that plaintiff was harmed; and (iv) that defendant's conduct was a substantial factor in causing plaintiff's harm. *See, e.g.*, *James v. US Bancorp*, No. 5:18-cv-01762-Fla (SPx), 2021 WL 4582105, at *6 (C.D. Cal. Aug. 3, 2021); *Grundy v.*

---

[7] The Court finds BANA's support for this claim to be distinguishable from the instant case. *See, e.g.*, *Mora v. U.S. Bank*, No. CV 15-02436 DDP(AJWx), 2015 WL 4537218 (C.D. Cal. July 27, 2015) (finding the complaint itself alleges that defendant's purportedly discriminatory denial of a loan modification was based, in part, on plaintiffs' income being below the defendant bank's requirement); *Mir. v. State Farm Mut. Auto. Ins. Co.*, No. 2:19-cv-03960-SVW-SK, 2019 WL 8355841 (C.D. Cal. Sep. 19, 2019) (concluding, without further explanation, that plaintiff's complaint "includes no factual allegations that would permit an inference of discriminatory conduct sufficient to survive a motion to dismiss.").

*Walmart Inc.*, No. CV 18-1720-PSG (SKx), 2018 WL 5880914, at *3 (C.D. Cal. June 22, 2018). Plaintiff's complaint must include "some factual context that gives rise to a plausible inference of discriminatory intent[.]" *Duronslet v. Cty. of Los Angeles*, 266 F. Supp. 3d 1213, 1217 (C.D. Cal. 2017).

As with Plaintiff's § 1981 claim, BANA's challenge to Plaintiff's Unruh Act claim focuses on whether Plaintiff sufficiently pled allegations of intentional discrimination.[8] BANA asserts that Plaintiff's allegations are merely conclusory, but the Court has already found otherwise. *See supra* III.A.2, III.B. Plaintiff alleges sufficient factual allegations to state a claim that BANA closed his account with an intent to discriminate at this stage. (Compl. ¶¶ 28–38, 43–51, 55–58.) BANA also argues that even if its policies and actions were discriminatory, they were permissible as "reasonable" discrimination that was conducted in compliance with OFAC regulations. (Mot. 15–16.) But this argument does not address Plaintiff's allegation that BANA failed to follow its own OFAC compliance policies (Compl. ¶ 45) and assumes that BANA's policies and actions do not discriminate beyond what is reasonable to comply with OFAC regulations.

BANA's reliance on *Howe v. Bank of America, N.A.*, 102 Cal. Rptr. 3d 506 (Cal. Ct. App. 2009), is unconvincing for similar reasons. In that case, a California Court of Appeal found that BANA's policy of requiring U.S. citizens to provide a Social Security Number was compelled by federal regulations. *Id.* at 512. There has been no such showing in this case. Although BANA argues that the OFAC regulations mandate its policies, BANA has not identified specific regulations that require them, and whether they were followed as to Plaintiff, nor could the Court consider these facts if set forth by BANA at the pleading stage. (Mot. 1–3.) Whether OFAC regulations compelled BANA's policies and closure

---

[8] BANA argues that *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1172 (Cal. 1991), requires that a plaintiff plead "willful, affirmative misconduct" and not just "intentional discrimination." (Mot. at 14–15.) BANA faults Plaintiff for excluding "any reference to willful, affirmative misconduct[.]" (*Id.*) The Court does not view *Harris* as adding a "willful, affirmative misconduct" pleading requirement. The *Harris* Court referenced "willful, affirmative misconduct" as a part of its analysis rather than a necessary element. 52 Cal. 3d at 1172.

of Plaintiff's account is a contested issue. (Opp'n 21–22.) The Court resolves the issue in Plaintiffs favor at the motion to dismiss stage and finds that Plaintiff has pled facts sufficient to state his Unruh claim.

Finally, BANA's argument that Plaintiff's Unruh claim is time-barred is inapposite. Plaintiff filed his complaint on August 27, 2021. He alleges that his account was first restricted on approximately September 30, 2019 and was later closed in October 2019. (Compl. ¶¶ 39, 45.) Thus, Plaintiff's alleged injury occurred within two years of the filing of this action. BANA argues that "to the extent Plaintiff's allegations are premised on events prior to August 27, 2019, such as the May 2019 and August 2019 letters from BANA, those claims are time-barred." (Reply 7.) BANA's theory suggests that accrual begins, not at the time of the injury, but when a plaintiff first has evidence of a potential future injury. This is approach is not supported by California law. *Vaca v. Wachovia Mortgage Corp.*, 129 Cal. Rptr. 3d 354, 358–59 (Cal. Ct. App. 2011). The Court finds Plaintiff's claim for a violation of the Unruh Act to be timely. *See Patton v. Hanassab*, No. 14-CV-1489-AJB-WVG, 2015 WL 589460, at *8 (S.D. Cal. 2015).

### D. Plaintiff's California Unfair Competition Law ("UCL") Claim

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. "Because the statute is written in the disjunctive, it is violated where a defendant's act or practices" were unlawful, unfair, or fraudulent. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999) (internal citations and quotation marks omitted). By prohibiting unlawful practices, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *De La Torre v. CashCall, Inc.*, 422 P.3d 1004, 1012 (Cal. 2018) (internal citations and quotation marks omitted). Plaintiff alleges unlawful, unfair, and fraudulent theories of unfair competition. (Compl. ¶¶ 122–32.)

BANA asserts several theories challenging Plaintiff's UCL claim. First, BANA asserts that California's safe-harbor doctrine protects BANA from liability under the UCL. The safe harbor doctrine recognizes that the California Legislature "may limit the judiciary's power to declare conduct unfair" under the UCL. *Cel-Tech*, 973 P.2d at 541. "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Id.* at 562. BANA argues that its compliance with OFAC regulations provide a safe harbor for its policies and actions. As stated above, that view rests on an assumption regarding BANA's policies and ignores Plaintiff's allegations that BANA did not follow its own policies.

Second, BANA argues that Plaintiff's UCL claim fails because Plaintiff did not sufficiently plead an underlying violation of substantive law. The Court disagrees and previously found that Plaintiff sufficiently stated a claim for violations of ECOA, § 1981, and the Unruh Act. *See supra* III.A–C. These alleged underlying violations may support a UCL claim.

Third, BANA challenges Plaintiff's allegation that BANA's actions constitute unfair business acts or practices. BANA asserts that Plaintiff's allegations fail under all potentially applicable tests for a UCL unfairness claim. (Mot. 18–20.) Courts have applied different tests to evaluate a claim under the "unfair" prong of the UCL. *Pallen v. Twin Hill Acquisition Co., Inc.*, No. SACV 12-01979 DOC (MLGx), 2013 WL 12130033, at *3 (C.D. Cal. April 26, 2013).[9] Both Plaintiff and BANA apply forms of the "public policy" test to Plaintiff's claims. BANA asserts that the "tethering" test, which requires the public policy at issue "to be tethered to specific constitutional, statutory, or regulatory provisions" is the proper public policy test. (Mot. 19 (citing *Gregory v. Albertson's, Inc.*, 128. Cal. Rptr. 2d 389, 394–95 (Cal. Ct. App. 2002)).) Plaintiff argues that the Court should either apply the

---

[9] BANA suggests that Plaintiff's allegations are deficient under the "reasonable consumer" test. The Court does not view this test as applicable. The "reasonable consumer" test is more appropriate for UCL claims that stem from allegations of false advertising or misrepresentation. *See Maxwell v. Unilever United States, Inc.*, No. 5:12-cv-01736-EJD, 2018 WL 1536761, at *5 (N.D. Cal. Mar 29, 2018).

"tethering" test or the *Sperry* test. The *Sperry* test requires that an allegedly unfair act (i) offends public policy; (ii) is immoral, unethical, oppressive, or unscrupulous; or (iii) causes substantial injury to consumers. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 758–59 (N.D. Cal. 2019). Plaintiff's allegations meet the requirements of both tests. As discussed, Plaintiff sufficiently pled claims against BANA for violations of state and federal statutes. These alleged violations of intentional discrimination are contrary to the public policy concerns that pervade through ECOA, § 1981, and the Unruh Act. The Court already concluded that Plaintiff sufficiently pled intentional discrimination, which amounts to immoral, unethical, oppressive, or unscrupulous conduct. Plaintiff alleges a "substantial" injury given that his account was closed (Compl. ¶ 38), he lost reward points that held value (*id.* ¶ 39), he suffered adverse impacts on his credit (*id.* ¶ 40), and he endured intentional discrimination (*id.* ¶ 42).

BANA also asserts that the Court should apply the "balancing" and "FTC" tests to Plaintiff's claims. The "balancing" test is similar to the *Sperry* test in some respects. It requires that an alleged business practice be "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum v. San Fernando Valley Bar Ass'n.*, 106 Cal. Rptr. 3d 46, 53 (Cal. Ct. App. 2010). The "FTC" test is drawn from the Federal Trade Commission Act and requires: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not have reasonably avoided. *Id.* at 54. As discussed, Plaintiff's claims sufficiently allege substantial injury and immoral, unethical, oppressive, and unscrupulous conduct. The balancing and FTC tests add the consideration of countervailing benefits for a defendant's actions. BANA asserts that Plaintiff's alleged injuries are outweighed by the utility of BANA's compliance with OFAC regulations for national security purposes. (Mot. 20.) But this once again assumes that BANA's policies are necessary to follow OFAC's regulations and that BANA followed the policies with respect to Plaintiff. BANA also

asserts that Plaintiff could have avoided his injuries if he had timely provided sufficient proof of residency documentation. (*Id.*) But BANA's factual allegations contradict Plaintiff's complaint (Compl. ¶¶ 28–38), and on a motion to dismiss the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.

Finally, BANA argues that Plaintiff fails to state a claim under the "fraud" prong of the UCL. (Mot. 20–22.) A "fraudulent" business act or practice within the meaning of the UCL is one that is likely to deceive members of the public. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). The challenged conduct "is judged by the effect it would have on a reasonable consumer." *Id.* However, "[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (Cal. Ct. App. 2007). The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to UCL claims brought under a fraud theory. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Thus, Plaintiff's allegations must state "with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).

Plaintiff alleges that BANA violated the UCL by knowingly misrepresenting and concealing that discrimination was the actual reason for restricting and closing his account. (Compl. ¶ 128.) Plaintiff asserts that BANA had a duty to disclose its discriminatory practices. (*Id.* ¶ 130.) In contrast, BANA argues that there is an "utter absence of deceptive conduct" in the Complaint. (Mot. 21.) The Court finds otherwise for reasons discussed above. Plaintiff's allegations, taken as true, demonstrate misrepresentation and concealment. First, Plaintiff alleges that BANA informed him that a Form I-797C was an acceptable form of a "Permanent Residency Document," but did not accept his valid Form I-797C multiple times. (*Id.* ¶¶ 26–32.) Second, Plaintiff alleges that a BANA representative indicated that Plaintiff's forthcoming Green Card would suffice to reinstate his account, but his account was closed shortly thereafter. (*Id.* ¶¶ 36–37.) Finally, Plaintiff alleges that BANA never provided him with a statement of reasons for the closure of his

account as required by ECOA. (*Id.* ¶¶ 38, 43.) These allegations, taken together in the light most favorable to the non-moving party, are sufficient to state a claim that a reasonable consumer would have been deceived by BANA's representations and that BANA violated a duty to disclose the reasoning for the account closure.

Thus, Plaintiff has adequately stated a claim under the California UCL based on unlawful, unfair, and fraudulent theories of unfair competition.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** BANA's motion to dismiss in its entirety.

**IT IS SO ORDERED.**

**DATED: May 18, 2022**

Hon. Cynthia Bashant
United States District Judge