**MIGLIACCIO & RATHOD LLP**
Matthew A. Smith (CA No. 309392)
Nicholas Migliaccio, *pro hac vice*
Jason Rathod, *pro hac vice*

**SINGLETON SCHEIBER, LLP**
Benjamin I. Siminou (CA No. 254815)

*Attorneys for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD FARSHAD ABDOLLAH NIA, individually, and on behalf of all similarly situated, | **Case No. 3:21-cv-01799-BAS-BGS** |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | Judge: Hon. Cynthia J. Bashant |
| BANK OF AMERICA, N.A., | Magistrate Judge: Hon. Bernard G. Skomal |
| Defendant. | |

Plaintiff Mohammad Farshad Abdollah Nia ("Plaintiff" or "Mr. Nia"), by and through his attorneys, individually and behalf of all others similarly situated, brings this action against Defendant Bank of America, N.A. ("Bank of America" or "Defendant") pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*; federal civil rights law, 42 U.S.C. § 1981; and the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 51.5, and 52 ("Unruh Act"). Plaintiff alleges the following based on personal knowledge as to his own acts and based upon the investigation conducted by their counsel as to all other allegations:

## I.    INTRODUCTION

1.      Plaintiff brings this civil-rights class-action lawsuit on behalf of himself and others who have been impacted by Defendant's discriminatory practice of arbitrarily restricting and closing the accounts of persons of Iranian descent based on their race, religion, ancestry, citizenship, and/or immigration status.

2.     Defendant's discriminatory business practices are straightforward. On information and belief, Defendant, through its employees and representatives, identifies individual account holders with connections to Iran and restricts or closes their accounts. This is sometimes accomplished by conditioning the individual's access to their account on their fulfillment of an arbitrary and pretextual requirement, such as the provision of a redundant or otherwise unnecessary document. In other cases, an individual may simply discover that their account has been restricted or closed and Defendant refuses to offer an explanation or justification for its actions.

3.     When Defendant restricts or closes an account, the account holder loses access to their funds and is consequently left with only the amount of cash they have on hand. Without access to their bank accounts, many are unable to complete essential transactions such as rent, mortgage, and/or utility payments, and often incur fees for bounced checks, late payments, and other charges resulting from their inability to access their funds or credit lines.

4.     Because of Defendant's discriminatory practices, Plaintiff and the proposed Class members have also been denied the opportunity to use or obtain financial services from Defendant, such as mortgages, personal loans, bank accounts, credit accounts, insurance, investment opportunities, and financial consulting services for several years.

5.     Plaintiff and the members of the Class have suffered direct and proximate damages, including lost time, the loss of credit card reward points, and suffered financial hardships arising from the sudden loss of their accounts, including damage to their credit history. They have also suffered the indignity of discrimination.

6.     Plaintiff Mohammad Farshad Abdollah Nia is a permanent resident of the United States and an immigrant from Iran. He first moved to the United States in 2011 to obtain a doctoral degree in physics, and possessed a student visa in order to do so.

7.     Mr. Nia first opened a credit account with Defendant near the end of 2015. Until late 2019, Mr. Nia used the credit card associated with his account primarily to purchase groceries and meals in restaurants.

8.     Mr. Nia became a victim of Defendant's discriminatory business practices in the fall of 2019 when Defendant arbitrarily restricted and then closed his credit card account. Defendant did so

even after Mr. Nia provided valid proof of permanent residency with a document (Form I-797C) that Defendant had previously indicated in writing would satisfy its residency requirement.

9.      After asking for clarification, Defendant's representatives replied, in words or substance, "we don't have to do business with you." The last representative Mr. Nia spoke to hung up on him.

10.     Defendant never provided a written explanation for closing his account.

11.     Mr. Nia felt humiliated and demeaned by Defendant's behavior. He worried that he would be unable to avail himself of future financial services with Defendant and other financial institutions as the result of this experience.

12.     Defendant's closure of Mr. Nia's account is an instance of a larger pattern of discrimination against persons of Iranian or Middle Eastern descent based on their race, religion, ancestry, citizenship, and/or immigration status.

13.     This case seeks protection and relief for Mr. Nia and others impacted by Defendant's discriminatory business practices.

## II.     JURISDICTION, VENUE AND GOVERNING LAW

14.     Jurisdiction of this Court arises under California Code of Civil Procedure § 410.10. This matter is brought as a class action on behalf of Plaintiff and putative Class Members pursuant to Cal. Code Civ. Proc. § 382.  The aggregated amount of damages incurred by Plaintiff and the Class exceeds the $25,000 jurisdictional minimum of this Court.

15.     This action arises out of the Defendant's violations of the ECOA, 15 U.S.C. § 1691 *et seq.*, and Plaintiff's equal rights under the law as defined under 42 U.S.C. § 1981. This action also arises out of Defendant's violations of the California Unruh Act.

16.     The Court has personal jurisdiction over Defendant because its principal place of business is located, and they conduct substantial business, in this District.

17.     Venue is proper in this Court under California Bus. & Prof. Code § 17203, Code of Civil Procedure §§ 395(a) and 395.5 because Defendant does business in the State of California, and in the County of San Diego, and a substantial part of the evens giving rise to the claims alleged herein occurred in San Diego County. Plaintiff also resides in the County of San Diego.

1

## III.    PARTIES

2          18.    Plaintiff is a permanent resident of the United States and resides in San Diego,

3    California. He is an immigrant from Iran and his name is of Iranian origin.

4          19.    Mr. Nia first moved to the United States in or around September 2011 to obtain a

5    doctoral degree in physics.

6          20.    Mr. Nia remained on a student visa for the duration of his studies. On April 30, 2019,

7    Mr. Nia filed an application for permanent residency and on May 7, 2019, received a Form I-797C

8    noting the receipt of his Application to Register Permanent Residence. Mr. Nia received permanent

9    resident status on or around November 2019.

10         21.    Defendant Bank of America is a National Banking Association with its principal place

11   of business in Charlotte, North Carolina. Bank of America does business throughout California,

12   including in the County of San Diego, and has provided business checking accounts and other banking

13   services related to the subject matter of this complaint within the County of San Diego, California.

14

## IV.    FACTUAL ALLEGATIONS

15         22.    Plaintiff repeats, reiterates, and incorporates the allegations contained previously

16   within this Complaint with the same force and effect as if the same were set forth at length herein.

17   **A.    Plaintiff was a Victim of Defendant's Discrimination**

18         23.    Mr. Nia maintains several banking and credit accounts with banking institutions in the

19   United States. He is in good standing with all of these institutions except for Defendant.

20         24.    He first opened a credit account with Defendant near the end of 2015. Mr. Nia used his

21   credit account with Defendant primarily to purchase groceries and meals in restaurants. He was

22   enrolled in Defendant's rewards program and earned reward points until the card was closed. He

23   always used the account for transactions within the United States. Mr. Nia is unaware of any

24   transactions on his account that would have appeared suspicious or otherwise raised concerns. He has

25   never used the card for any transaction relating to Iran or any other sanctioned country.

26         25.    To prove his residency in connection with opening his credit account, Mr. Nia furnished

27   his driver's license to Defendant. Defendant deems a driver's license to be a temporary residency

28   document that must be updated annually, and Mr. Nia sent a copy of his driver's license to Defendant

1   upon Defendant's request periodically thereafter.

2         26.     Defendant's letters to Mr. Nia regarding proof of residency identified four "Permanent

3   Residency Documents," including a United States Passport, Green Card, and Form I-797C, with no

4   expiration or other temporal limitation noted (in contrast with the temporary residency documents,

5   which the letters state must be updated annually). The stated purpose of these documents is to satisfy

6   the requirements of the United States Department of the Treasury's Office of Foreign Assets Control

7   ("OFAC").

8         27.     Each of Defendant's communications to Mr. Nia requesting documentation of his

9   residency note his connections to Iran. Specifically, under the heading, "Additional information about

10   OFAC compliance," these letters state that Mr. Nia is not permitted to, for example, use his account

11   from Iran or use his account to conduct business with Iran.

12         28.     Defendant sent another request for proof of residency in May of 2019. In response, on

13   May 17, 2019, Mr. Nia sent Defendant a valid Form I-797C, Notice of Action, issued by the United

14   States Citizenship and Immigration Services ("USCIS") and dated May 7, 2019. A Form I-797C was

15   one of the documents that Defendant told Mr. Nia would suffice to prove his residency (*see* Paragraph

16   25, *supra*).

17         29.     Subsequently, in a letter dated August 26, 2019, Defendant sent another request that

18   ignored Mr. Nia's submission. This letter stated that "the temporary residency documentation you

19   provided will soon expire," and requested that he submit "updated documents to us by October 17,

20   2019." Under the heading, "What you need to do," the letter set forth several acceptable documents to

21   prove residency, again including a Form I-797C. The letter warned that his account would be restricted

22   if he failed to provide the requested documentation by September 25, 2019, and that all of his accounts

23   with Defendant would be restricted if he failed to provide documentation by October, 17, 2019.

24         30.     Mr. Nia again submitted his Form I-797C through Defendant's website.

25         31.     Defendant responded to Mr. Nia in a letter dated September 17, 2019 (the "Account

26   Status Letter"), which stated that the "residency documentation [he] provided was not sufficient." The

27   Account Status Letter explained that the information provided by Mr. Nia was insufficient to meet

28   Defendant's standards for compliance with OFAC because he had provided an "Unapproved

1    Document." *Id.*

2           32.    On the enclosed sheet of the Account Status Letter, however, under the heading

3    "Acceptable Documentation for Proving your Current Residence," Defendant presented the Form I-

4    797C, Notice of Action, as one of four options. The subheading on this page directs the recipient to

5    "[p]lease provide a copy of <u>any</u> one of these. . . . Document must not be expired." *Id.*

6           33.    The Account Status Letter warns that "This request is extremely time-sensitive, and we

7    need you to act right away. As mentioned in previous communications, if your proof of residency

8    documentation is not received and verified within the specified timeframes, your account(s) will be

9    restricted."

10          34.    Mr. Nia was confused by the contradiction between Defendant's request for

11   documentation—specifically, a Form I-797C—and its apparent rejection of his Form I-797C with no

12   explanation as to why. He assumed the best, *i.e.*, that the letters had been sent in error, and continued

13   to use his account.

14          35.    Plaintiff discovered that his account had been restricted in late September when he was

15   unable to complete a purchase using his card. Plaintiff does not know the exact date when Defendant

16   first restricted his account but believes it was on or around September 30, 2019.

17          36.    Mr. Nia called Defendant on or around October 21, 2019. On that call, a representative

18   of Defendant informed Mr. Nia that Defendant could no longer accept the Form I-797C he had

19   provided to prove his residency in mid-May because more than six months had elapsed from the date

20   of its issue. Mr. Nia informed the representative that he expected to receive his Green Card in the near

21   future and that he would promptly send it in once received. Defendant concurred that that would

22   suffice. Mr. Nia left the call believing that Defendant had agreed to maintain his account in its

23   restricted state until it received his Green Card.

24          37.    Unbeknownst to Mr. Nia, Defendant closed Mr. Nia's account that day or shortly

25   thereafter. On November 4, 2019, Mr. Nia attempted to access his account via Defendant's website

26   with the intent to upload a scan of his newly issued Green Card. Upon discovering that he was unable

27   to access his account at this time, he called Defendant again.

28          38.    A representative of Defendant confirmed that Defendant had closed his account on or

shortly after October 21, 2019—the date Mr. Nia first called Defendant to inquire about the restrictions placed on his account. This representative stated that Defendant had closed Mr. Nia's account because he had provided insufficient documentation of his residency and explained that the Form I-797C expired or was otherwise invalid after six months. Defendant's representative refused to clarify the policy pursuant to which it closed Mr. Nia's account. When pressed by Mr. Nia on the fact that Defendant's letters showed the Form I-797C as valid proof of permanent residency, one of Defendant's representatives replied, in words or substance, "we don't have to do business with you." They also acknowledged that they had not sent a notice of closure to Mr. Nia and refused to send a notice or other written explanation for their actions even after the closure.

39.     As a result of his account closure, Mr. Nia lost the reward points he had accrued in connection with his account and he was forced to make purchases in cash or use other accounts that did not offer rewards. On or around September 17, 2019, shortly before the account was restricted, Mr. Nia had redeemed points toward a balance payment. But, he made approximately $2,000 in purchases between roughly September 17 and September 30 (when his account was restricted), for which he lost rewards points.

40.     He also suffered adverse effects to his credit from the sudden and involuntary closure of his credit account.

41.     In addition, Mr. Nia missed days of work trying to communicate with Defendant during his business hours and receive clarification as to why his account was suddenly closed. He estimates approximately 10-20 hours of lost working time.

42.     Mr. Nia also felt humiliated and demeaned by Defendant's repeated insistence that he provide immigration documentation, its refusal to accept his valid documents as sufficient, and its sudden restriction and closure of his account. He worried that he would be unable to avail himself of future financial services with Defendant and other financial institutions as the result of this experience.

43.     Neither Defendant nor its representatives provided warning to Mr. Nia prior to closing his account. All of Defendant's communications stated only that his account would be "restricted" if he did not timely comply with Defendant's demand for additional documentation. Defendant did not threaten account closure. And, after his account had been closed, Defendant refused to provide any

explanation for its actions beyond the false claim that Mr. Nia's Form I-797C had expired. Mr. Nia has received no written notice or explanation regarding the closure of his account.

44.     There is no basis for Defendant's contention that Mr. Nia's Form I-797C had expired. A Form I-797C is valid for the duration of an immigration proceeding and therefore does not expire after a set period of time. Moreover, a Form I-797C is a "notice of action"—in Mr. Nia's case, noting the receipt of his Application to Register Permanent Residence—and not a document that an applicant can "renew" or otherwise seek a more recent issue of.

45.     Moreover, Defendant's documents and written communications to Mr. Nia did not explain that a Form I-797C would, for the purpose of establishing residency to Defendant's satisfaction, expire six months after the date of issuance. On the contrary, Defendant's written communications to Mr. Nia clearly showed that the Form I-797C was a valid document for the purpose of establishing residency on par with a United States passport or Green Card (in contrast with temporary residency documents, which had to be renewed annually). Even assuming Defendant does have an unwritten policy that Form I-797Cs must be "renewed" every six months, **Defendant began harassing Mr. Nia in August, only three months after his Form I-797C was issued, and closed his account in October—just over five months from the date of issue**.

46.     Defendant targeted Mr. Nia and imposed arbitrary and contradictory demands on him which he could not satisfy, and which ultimately led to the restriction and closure of his account, solely because of his race, religion, ancestry, citizenship, and/or immigration status.

**B.     Defendant Regularly Discriminates against those of Iranian or Middle Eastern Descent**

47.     Multiple publications and other sources have documented and detailed Defendant's practice of targeting persons of Iranian or Middle Eastern descent and closing or threatening to close their accounts for illegitimate reasons. Defendant's pattern of behavior strongly suggests that they targeted these persons based on their race, religion, ancestry, citizenship, and/or immigration status.

48.     In 2018, Saeed Moshfegh, an Iranian pursuing a Ph.D in physics at the University of Miami, and who had been living in the United States for seven years, found that he could no longer access the money in the checking account he held with Defendant. *See* Rob Wile, *He's been studying in the U.S. legally for 7 years. Bank of America froze his account anyway*, MIAMI HERALD (Aug. 30,

2018), *available at* https://www.miamiherald.com/news/business/article217095125.html (*last visited* August 6, 2021).

49.     When Mr. Moshfegh called to inquire, a representative of Defendant told Mr. Moshfegh that "the documentation he had provided could not be accepted. Bank officials insisted he produce a different form . . . ." even though the document Mr. Moshfegh had provided on multiple occasions had previously sufficed. *Id.* As a result of Defendant's actions, Mr. Moshfegh was unable to pay his rent or credit cards while his account was restricted. *Id.*

50.     Also in 2018, Defendant contacted a Miami businessman of Middle Eastern descent, who used the pseudonym Rami Abboud in the reporting article, and threatened to close his account if he did not take their call immediately. *See* Kevin G. Hall and Rob Wile, *Are Muslim-owned accounts being singled out by big banks?*, MCCLATCHYDC.COM (Dec. 17, 2018), *available at* https://www.mcclatchydc.com/latest-news/article221921090.html (*last visited* August 25, 2021). Although Mr. Abboud had banked with Defendant for approximately twenty-five years, the representative proceeded to ask Mr. Abboud to confirm his birthday and asked whether Mr. Abboud was a dual citizen. *Id.*

51.     Defendant's discriminatory actions against Mr. Nia and the members of the Class reflect a deeply ingrained corporate culture of discrimination. Indeed, over the past decade Defendant has paid out hundreds of millions of dollars in fines and settlement payments relating to unlawful discrimination against racial and ethnic minorities.

52.     In 2019, the U.S. Department of Labor found that Defendant had engaged in hiring discrimination against minority job applicants in locations scattered across four states. *See* Vin Gurrieri, *BofA Strikes $4.2M Deal To End DOL Hiring Bias Probe*, CHARLOTTE OBSERVER (Sep. 30, 2019), *available at* https://www.law360.com/articles/1204169 (*last visited* August 25, 2021). In connection therewith, Defendant agreed to pay $4.2 million in back wages and interest—one of the largest settlements in the history of similar actions. *Id.*

53.     In 2013, Defendant was fined $2.2 million for discriminating against minority job candidates over the prior two decades. *See* Alanna Petroff, *Bank of America fined $2 million for race discrimination*, CNN.COM (Sep. 24, 2013), *available at*

https://money.cnn.com/2013/09/24/news/companies/bofa-racial-discrimination/ (*last visited* August 25, 2021). In this matter, the U.S. Department of Labor found that Defendant had discriminated against 1,100 African-Americans seeking entry-level positions. *Id.*

54.    Just two years prior, Defendant agreed to pay $335 million to resolve allegations that it engaged in a widespread pattern of discrimination against qualified African-American and Hispanic borrowers seeking home mortgage loans. *Bank of America settles discrimination suit for $335M*, CBSNEWS.COM (Dec. 21 2011), *available at* https://www.cbsnews.com/news/bank-of-america-settles-discrimination-suit-for-335m/ (*last visited* August 25, 2021).

55.    Defendant's discriminatory actions against persons of Iranian or Middle Eastern descent also fit within a larger trend impacting the retail banking industry:

> Banking experts say that as banks have faced increasing scrutiny from regulators in a post-recession world, they are eliminating as much risk as possible. Lacking clarity on what might trigger government fines, banks are being overly cautious, some experts say.

> "It's not inconceivable to think an Islamic American or Arab American would be closed due to their perceived higher risk because of their connections to high-risk jurisdictions," said Brian Kindle of the Assn. of Certified Financial Crime Specialists. "There's something going on here, and I think it ties back to the de-risking trend."

Paresh Dave, *Bank Clients of Middle Eastern Descent Want Answers on Closed Accounts*, L.A. TIMES (Sep. 7, 2014), *available at* https://www.latimes.com/nation/la-na-banks-muslims-20140907-story.html (*last visited* August 25, 2021).

56.    According to Gadeir Abbas, senior litigation attorney for the Council on American-Islamic Relations, "It is what it looks like, the closure of bank accounts held by Muslims or those mistaken as Muslim. It's Islamophobia . . . something is systematically happening that is resulting in the closure of bank accounts held by Muslims and Islamic institutions." *See* Kevin G. Hall and Rob Wile, *Are Muslim-owned accounts being singled out by big banks?*, MCCLATCHYDC.COM (Dec. 17, 2018), *available at* https://www.mcclatchydc.com/latest-news/article221921090.html (*last visited* August 25, 2021).

57.    Consumers across the country have complained of Defendant's discrimination against them when using their Bank of America accounts based on their Middle Eastern or Iranian origin. For

example, the following consumer complaints were lodged with Defendant's primary regulator, the Consumer Financial Protection Bureau:

| **Complaint Date:** 6/3/2020 | **Consumer State:** Florida | **CFPB ID:** 3712152 |
|---|---|---|
| Complaint Narrative: Bank of America offered to open my business account online, I accepted and opened 2 accounts, after rigorous Identity verification all information was confirmed the accounts was opened (account number XXXX) and charged my debit card to fund the initial deposit. Then 3 days later without any explanations the bank closed the accounts, I called the customer service and they told me that they are unable to give me any information. Now the online ID are deactivated and the accounts closed without any reason, It seem to be like a discrimination, XXXX act and misleading advertising from Bank of America. | | |

| **Complaint Date:** 2/2/2020 | **Consumer State:** California | **CFPB ID:** 3538297 |
|---|---|---|
| Complaint Narrative: My primary checking and savings accounts were frozen by Bank of America ( BoA ) on or around XXXX XXXX XXXX. I was not notified or aware of this until XXXX XXXX XXXX after receiving information from my university 's financial aid office that my tuition payment was rejected due to a " Dishonored Account. " I promptly called the BoA customer line ( XXXX ) at XXXX XXXX on XXXX XXXX XXXX and spoke to a representative. I was informed that my account was frozen because there was missing information from a co-owner, my mother. She does not have access to the account and should have been removed from co-ownership over a year ago. However, BoA 's records indicated that she is still a co-owner on the account. I am the sole owner of the accounts and have been since I opened the accounts in XXXX. The representative informed me that my accounts could not be unfrozen until XXXX updated " profile information " with the bank. Federal Customer Identification Program (CIP) laws were cited as the reasoning behind the frozen account. Getting nowhere with the representative on the phone, I visited a local BoA branch in XXXX XXXX at XXXX XXXX XXXX XXXX XXXX XXXX XXXX and spoke with a Relationship XXXX, XXXX XXXX. Initially XXXX XXXX was not able to even locate my accounts in the system using various points of information -- including my SSN and previous addresses. Once we were able to locate my accounts in the system, a message indicated that we needed to call the Texas branch of BoA and speak with a representative over the phone. Again, I was told that the co-owner must " update profile information " before the account could be unfrozen. No information about the nature of " profile information " was given and at no time was proper notice given to me. XXXX CFR XXXX - " Customer identification programs for banks, savings associations, credit unions, and certain non-Federally regulated banks " laws do not require additional information be provided to the banks after the initial opening of accounts -- which occurred around 11 years ago. I believe my accounts have been frozen under immigration/citizenship questioning as many others have reported with BoA since XXXX -- despite both co-owners being natural-born citizens. I believe that these actions are unlawful and these actions by BoA have caused several of my normally occurring bills to bounce, become late, negatively impact my credit, and incur additional fees from billing agencies. This has caused me undue financial hardship and negatively impacts my job status as I have needed to spend hours away trying to sort it out. | | |

| **Complaint Date:** 10/19/2019 | **Consumer State:** California | **CFPB ID:** 3411225 |
|---|---|---|
| Complaint Narrative: Hello I have been a customer of bank of America for over 2 years and 5 months ago they closed all of my accounts plus 4 credit cards 2 personal and 2 buisness | | |

1

2    and said after months of them saying we get back to you as to why saying they need 45 to
     60 days for the investigation which they were doing nothing never been late on any
3    payments always had money in my checking accounts and finally when I went to the branch
     to get answers as to why the banker said because of my race that I am XXXX and that's
     discrimination and illegal in America and was told there is a lawsuit going on because of
4    bank of America closing accounts because of race particularly being armenian which is
     horrible to experience that and would like it if you can help me resolve this issue thank you

5

6    | Complaint Date: 8/29/2019 | Consumer State: New York | CFPB ID: 3358213 |
     |---|---|---|

7    Complaint Narrative: I opened a new Bank of America credit card in XX/XX/XXXX in one
     day to the other two weeks later they just closed it down. and when I called them they told
8    me that I have very good credit they just want I should go down to a Branch with my license.
     I went down to fax the documents that they needed and still, they don't want to open up the
9    card. that's real discrimination I have a good relationship with all the banks and they should
     open the account as soon as possible

10

11   | Complaint Date: 7/1/2019 | Consumer State: Washington | CFPB ID: 3292510 |
     |---|---|---|

12   Complaint Narrative: I am writing to you about a serious issue regarding Bank of America.
     My wife and I have been dealing with ongoing attacks by Bank of America : For the past
13   year ( since XX/XX/XXXX ) Bank of America has frozen our accounts multiple times with
     absolutely no prior notice. We find out our card being denied when we are shopping. When
14   we call in, they transfer us multiple times until someone asks us information about our
     residence, our jobs, and our citizenship. We do not hold dual citizenship. When they ask
15   what is our nationality, of course we identify as XXXX, with our sole citizenship with U.S.
     ( meaning ethnically we identify as XXXX ) On Thursday XX/XX/XXXX they closed our
16   credit cards with no notice. We called and went into the branch several times and they said
     they can't provide any information and the only thing they told us is that we are a 'High Risk
17   ' customer ( we have perfect credit scores and have never missed a payment ). Then they
     proceeded to close our checking, savings [ with no notice in mail until we called in and
18   asked them to send us a written notice! ]. Merrill Edge, a Bank of America company, also
     closed our Cash Management Account, and our Roth IRA. Merrill Edge gave us a 1-day
19   notice via a letter before closing our account. We have been bank-less for a few days now,
     and regardless this has caused a lot of frustrations. Can you please assist us in seeing what
     next steps there are regarding this matter? Thank you in advance,
20

21   | Complaint Date: 7/25/2018 | Consumer State: New York | CFPB ID: 2973090 |
     |---|---|---|

22   Complaint Narrative: Bank of America closed my checking account and my debit card
     without notifying me. They did not send me any communication prior to closure and closed
23   my account on the basis of my wife 's nationality. I have a shared account with wife,
     and according to BOA representative on the phone they closed my account " because they
24   needed some information and documents " relating to my wife 's nationality and therefore
     they decided to close her checking account and mine! They did not call me to ask for "
25   information and documents ", did not email me, sent me no letter through mail and just
     decided to close both my checking account and my wife 's checking account. This is
26   targeting individuals based on their nationality and treating them unfairly. This is
     discrimination based on national origin. We do not deserve to receive a warning
27   letter/email/phone call because we are of XXXX origin. And now we will not have access
     to our funds in the checking account for 10 days until they send checks to our address. I
28   asked the representative if we can at least walk in to a BOA branch and receive the checks
     today in person, and the answer was no, we will have to wait 10 days for the checks to be "

- 12 -
AMENDED CLASS ACTION COMPLAINT

1   approved " and " processed ". They want to " approve " whether they should give me my
2   money or not!

3   | **Complaint Date:** 7/4/2018 | **Consumer State:** New York | **CFPB ID:** 2953294 |

4   Complaint Narrative: I have had checking and credit accounts with Bank of America for
    many years. I have been residing in the US for many years as well. My national origin is
5   XXXX. In XX/XX/XXXX, Bank of America started to send me letters asking me to provide
    proof of my residency. The letters have specific dates before which I had to provide the
6   required documents ; otherwise, all my Bank of America accounts would be restricted as
    explained in the letters. The letters state that the bank has " certain rules " if it is " operating
7   accounts for individuals who are citizens of US-sanctioned countries. " I responded to
    previous letters and provided proof my residency in the US. The most recent letter was on
8   XX/XX/XXXX ( see attachment ). I believe Bank of America is discriminating against me
    based on my national origin. Because Bank of America is discriminating against me based
9   on my national origin, the bank has been unduly asking me to provide proof of my residency
    ; otherwise, the bank threatens to restrict my accounts. I have been continually residing in
10  the US since XX/XX/XXXX ( well before I received any letters from Bank of America
    requiring proof of my residency ).

11  | **Complaint Date:** 6/19/2018 | **Consumer State:** Unknown | **CFPB ID:** 2940577 |

12  Complaint Narrative:  My name is XXXX XXXX. I am XXXX y/o ; I am US citizen and
    my elderly mother lives in XXXX, XXXX ; I traveled there to visit her and apparently
13  accessed two weeks ago my bank account in Bank of America while there ; Bank of
    America had my account arbitrarily frozen. They say that this is because I " operated " my
14  account from XXXX and the international sanctions require this. This is not true. I contacted
    Office of Foreign Assets Control (OFAC) U.S. Department of the Treasury and asked them
15  if this was true that I am forbidden to do banking in XXXX. They responded today. Yes,
    XXXX is under sanctions, but they say " Fortunately, OFAC has issued a general license
16  (General License No. 4) authorizing US persons to send and receive funds to or from the
    XXXX region of XXXX or for or on behalf of an individual ordinarily resident in the
17  XXXX region of XXXX in cases in which the transfer involves a noncommercial, personal
    remittance. In short, personal remittances to XXXX are authorized so long as the transaction
18  meets the criteria of the general license. " But Bank of America told me that The Supervisor
    made " final decision " that I need to present myself at the BoA branch holding papers for
19  them to see and thn they will remove the hold! My explanations that I am abroad and BoA
    are only in US does not move them ... Now, this is my only money I had access to. This is
20  the only money I have ; My mother needs operation and I can not transfer the money to pay
    for operation. I am left with no money in a foreign country because BoA ... wait, I can not
21  even understand the reason why they are holding my money! I spoke to BofA at least 6-7
    times ; Second time I spoke to them, the representative told me all they needed was copy of
22  my passport and that they would remove the hold on account ; Three days later the account
    was still on hold, I called and spoke to somebody else who told me that they would not
23  restore the account and implied that this was because I was rude to the representative that
    called the first time ; I spoke also to the manager, XXXX XXXX XXXX ( if he gave me
24  the true name ) who would not tell me even the reason the account was blocked. Their
    position now is basically this : the don't have to explain anything to me, manager made final
25  decision that I need to go to BofA branch in order to restore the account ; my explanation
    that I am abroad and s But today they called again and said that now they want to close
26  account all together and want to send me a check. I informed them that I am traveling and
    banks in XXXX do not take checks. I instructed them to not send check to my old address
27  ; It is very difficult to speak to them. Their reps speak broken English, hide their names ;
    fake bad connection when they don't know what to say ... Pathetic ... I am not sure they even
28  understand what I tell them ... How can a Bank behave like this? They can solve this in a

- 13 -
AMENDED CLASS ACTION COMPLAINT

minute but would not ... If they needed to identify myself, why me coming to their branch? They have a number of ways to check if this is myself, I can send them my passport, the Embassy can wouch for me etc ; They just want to show they have power and a client does not -this is how it seems ... Because.The.Manager.Made.Final.Decision ... It appears from the Office of Foreign Assets Control explanation that the reason BoA provides can't be a valid reason. They don't reveal the real reason. They just want to show who is the Boss. Never thought a bank could do this! This can not be legal ... I did not violated sanction regime because I am a private citizen and can get funds from US in XXXX according to explanations I received from Office of Foreign Assets Control ; If it was legal we all would be in danger to loose our money because somebody in the bank did not like us or just had a bad day ... I am not talking about the fact that now I am abroad without any money because this is the only bank account I have capable to send money to XXXX ; They blocked the only debit card I have. I need money for medical expenses and to buy ticket home and I was counting with the money I entrusted to Bank of America ... What do I do now? I wrote letter to the member of BofA board but not sure this would help ... Thanks in advance, XXXX

| Complaint Date: 5/25/2018 | Consumer State: California | CFPB ID: 2918282 |
|---|---|---|

Complaint Narrative:  I am an international student with valid status and XXXX form my school. For unknown reasons ( probably being a citizen of those sanctioned countries ), Bank of America closed my credit line and blocked my checking and savings account. Bank of america already had my XXXX, passport, visa and drivers license documents on their file. Closure of my credit line has affected my credit score adversely.

| Complaint Date: 2/13/2018 | Consumer State: New York | CFPB ID: 2812975 |
|---|---|---|

Complaint Narrative: On or about XX/XX/XXXX I used my credit card at XXXX at XXXX XXXX, located at XXXX XXXX XXXX XXXX, XXXX XXXX, NY XXXX, to pay for my lunch and it was the first time I realized that the credit card is not working. Since then, I tried to use the card in few other occasions to make sure it is not working. All those transactions were declined. In the meantime, I started using my debit card to pay for my purchases. I believe the first time that I contacted Bank of America ( BoA ) to find out about the problem with my credit card was on XX/XX/XXXX when after waiting on the line for several minutes I was told that the account was suspended due to suspicious/fraudulent activity. The representative went through some transactions and I was told that the account was fixed and ready to be used. However, right after the call I checked my Mobile Banking Application and I still saw that the credit card was not available. I called again and I was told that the account was ready to be used at the fact that the application was not reflecting that was probably because of the delay in update. I tried to use my credit card again the next date or the day after and the transaction was declined again. Again, I started to use my debit card. Few days later on XX/XX/XXXX I called the bank and after waiting for about 20 minutes and talking to different representatives I was told that there was nothing that the representative could do as it was Sunday and there was no specialist present to assist me. I was asked to call back the day after. In the morning of XX/XX/XXXX, I received a notification on my cellphone reading that the debit card linked with my XXXX is not working ( a notification by XXXX, not by BoA ). I called BoA again around XXXX XXXX to talk with a representative to follow up on my call on the day before. After a long wait and talking to 2-3 different representatives, I was referred to a person from the BoA compliance, called XXXX. He told me that my credit line has been cancelled for compliance reason and he told me that a letter was sent to me asking for my most updated immigration documents. I mentioned I havent received anything but an Alert on my Mobile Banking Application few months earlier and at the time I uploaded my work authorization with the expiration date of XX/XX/XXXX. I pointed out that I have not received any other letter and he mentioned that in the allegedly sent letter we asked for the

most recent immigration document. As I saw no progress in the conversation I ended the call. Then I went to a branch located on XXXX XXXX, XXXX XXXX, NY XXXX. I talked with a relationship manager at the Branch called XXXX who tried to help me but he was not able to do anything on his own. He called a number apparently noted on my profile and he was speaking with a person in compliance department. He then sent a copy of my driver license to that person on the phone and she said it was not accepted. I asked to call directly to the person on the line and he passed the phone to me. The person on the line was called XXXX XXXX. She told me that bank needs my latest immigration documents. I mentioned that the one already uploaded by me earlier is valid by XX/XX/XXXX while we are on XX/XX/XXXX. She did not clear that for me and she again referred to an allegedly sent letter. I asked what the reason for restricting my account is. Specifically, I asked if it is because of my immigration documentation or my nationality and she responded my nationality. I had already explained to the relationship manager that I am in the process of changing my status and I will have the documentation of that once XXXX provides me with those. He explained it to her and still she was repeating the same thing about the policy of the bank. I also, had with myself XXXX FAQs about the extension of Optional Practical Training ( OPT ) Program for qualified students where it is explained even after the expiration of the XXXX XXXX there is a 60 day preparation for departure yet it was not accepted. ( See 8 CFR 214.2 ( f ) ( iv ) : ( iv ) Preparation for departure. An XXXX student who has completed a course of study and any authorized practical training following completion of studies will be allowed an additional 60-day period to prepare for departure from the United States or to transfer in accordance with paragraph ( f ) ( 8 ) of this section. An XXXX student authorized by the DSO to withdraw from classes will be allowed a 15-day period for departure from the United States. However, an XXXX student who fails to maintain a full course of study without the approval of the XXXX or otherwise fails to maintain status is not eligible for an additional period for departure. ( Revised effective XX/XX/XXXX ; 67 FR XXXX ) XXXX XXXX XXXX ) I also asked if I am able to receive any payment on my account while it is restricted and the response was negative. This is the case while I am expecting my salary to be paid on this account on Friday, XX/XX/XXXX. I was asked if I am still in the school and I explained that I am working and this question is irrelevant. All and all, as I found it useless to discuss more I asked for the direct number of the compliance department and I finished the conversation. On XX/XX/XXXX, I received a call from BoA compliance department, XXXX XXXX, who advised me to close my account among other things. I asked to talk to her manager and tried to explain the situation but out of no avail. The manager, XXXX XXXX, kept repeating a piece of the BoA policy and she told us untruthfully that the bank would be fined for $ XXXX for every single transaction processed through my account. ( Which as a person who works in XXXX Compliance department of another bank, I can say this is factually incorrect. ) I was conveyed that I can only withdraw money form ATMS or from tellers ; so I went to the same location as previously mentioned and tried to withdraw from the ATM and it was declined. Then I went to the teller asking to withdraw {$200.00} so I can pay my daily expenses ( e.g. food and transportation ) and she declined. I asked for a letter explaining the reason that they can not give me the money and she said she could not. She called her manger, XXXX XXXX, and he repeated the same thing and called BoA Compliance Department at XXXX XXXX XXXX. A person called XXXX responded and he did not provide any new thing and he said I can close my account. I asked for his last name and he refused to give me that. Now I have my credit line canceled and my checking and saving account restricted. It is also worthwhile that I was charged in the period that my credit card was suspended ( or canceled ) for a charge on car rental fees. I am an Iranian national and I have my current work authorization expired on XX/XX/XXXX, my XXXX on XX/XX/XXXX. I am in the process of filing a petition for XXXX XXXX which allows me for change of status and staying in the country lawfully. This is in addition of the 60 day so called Grace period which I can stay in the country after my XXXX expiration date. It is notable that I have to pay the legal fees for my immigration services by the end of the week but now due to the restriction of my account I am not able to do so. Besides, I

currently have no other account with any other bank and I do not have any access to any banking services. It has been two days now that I have had no access to my funds and it has crippled my life.

| Complaint Date: 9/28/2017 | Consumer State: Maryland | CFPB ID: 2687139 |
|---|---|---|

Complaint Narrative:  Dear Sir or Madam, Back in XXXX, when my wife and I were trying to receive XXXX gift from our families abroad to put a down payment for our first home purchase, our family in XXXX used a money exchange company to send the money to our Bank of America account. It looks, due to the XXXX sanctions, the money transfer company did not use the global wire or swift system, and instead did it through bartering. After noticing some cash deposits in our account, Bank of America called us and asked if we know the people who made those deposits. We told the story and gave them full authority to investigate the case and if needed return the money to the people. On XXXX XXXX, we both received letters from Bank of America saying they have decided to close our accounts. We asked for the reason, but was told the bank has the rights to end her business with us anytime they want and is not obliged to give us the reason. We accept that, but asked BoA to give us any kind of documents or evidence of blocking that XXXX so our parents back in XXXX can take the money exchange company to curt and ask for the refund. Since then, we have not received any update or answer from Bank of America. They simply ignore us, and despite calling more than XXXX times to people who we are told are working on our case, we have not heard a word. BoA even kept the sum of $ XXXX in my wife 's saving account which has had nothing to do with that disputed deposits. It is so frustrating to see that how Bank of America instead of treating us as victims, incriminating us, most likely profiling us because our relations to XXXX, and treating us with ultimate ignorance. And all of this has happened after we both were loyal customers of BoA for more that 5 years, and have got excellent records with them.

58.     The National Iranian American Council ("NIAC") has also fielded several complaints from Iranian-American consumers who have experienced similar acts of discrimination—most prominently, sudden and unexplained account closure—when trying to use their accounts with Bank of America. The volume of complaints prompted NIAC to engage in formal advocacy, including writing a letter to Bank of America on July 19, 2019, which reads:

> I am writing on behalf of the National Iranian American Council ("NIAC"), the largest grassroots organization in the United States representing the interests of Iranian Americans, regarding Bank of America's treatment of its U.S. customers of Iranian origin. Over the past several years, we have received persistent questions and complaints from Iranian Americans and Iranian nationals in the U.S. whose bank accounts have been abruptly closed by Bank of America – in some cases without notice and in other cases even when documents requested by the bank were submitted by these customers that confirmed that the provision of services to such customers was lawful. Our review of this material indicates that Bank of America has adopted policies and practices that are clearly discriminatory towards customers of Iranian origin. We therefore request that Bank of America immediately remediate its internal policies and procedures to ensure that such discrimination ceases. Absent such steps, we reserve the right to pursue litigation regarding this matter.

While we understand from past engagement that Bank of America cites U.S. sanctions on Iran as the basis for its actions, the actions undertaken by Bank of America are unwarranted as a matter of law. U.S. sanctions targeting Iran do not prohibit Bank of America from holding accounts on behalf of customers of Iranian origin. Instead, U.S. sanctions prohibit Bank of America from servicing "Iranian accounts," which are defined for purposes of the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560, as "accounts of persons ordinarily resident in Iran, except when such persons are not located in Iran." Unless Bank of America has indication that a customer is a person ordinarily resident in Iran and is physically located in Iran, Bank of America has no legal obligation to deny services to a given customer under the ITSR.

We find it egregious that Bank of America would treat its customers of Iranian origin in such a manner rather than appropriately tailoring its compliance policies and procedures in such a way as to ensure it conforms its conduct to the demands of U.S. law while respecting its customers' rights and providing its customers exceptional service. We remain interested in discussing steps that Bank of America can take to ensure that its customers of Iranian origin are not treated in a discriminatory manner by the bank, and we reserve the right to pursue litigation to resolve this issue if necessary.

We look forward to your response.

59.   A sampling of the complaint narratives received by NIAC is below:

| **Complaint Date:** Estimated 2017-2018 |
| --- |
| Complaint Narrative: One U.S. citizen had an account that was to be used for a down payment on a home frozen by Bank of America, in spite of the fact that they had not been to Iran in two decades and had already sent official documentation to the bank to confirm their U.S. citizenship. |

| **Complaint Date:** Estimated 2017-2018 |
| --- |
| Complaint Narrative: An Iranian national studying at a U.S. university had their account at Bank of America closed, where the individual had put all of their savings while in the United States. To add insult to injury, the bank reportedly sent the funds to the individual by check, which was lost in the mail and added further delay and hardship. |

| **Complaint Date:** Estimated 2019 |
| --- |
| Complaint Narrative: Another family was subject to two separate hardships by Bank of America. A 17-year-old woman born in the United States who had never set foot in Iran had her account closed with the bank claiming that they could not verify her information in spite of the fact that the family made regular deposits to the account and got routine statements from the bank. Separately, the bank threatened to close their 90-year-old grandmother's account – also a U.S. citizen – if they did not fill out a form asking for |

1

citizenship, residency, and other contact information already on file.

2

**Complaint Date:** 2018-2019

3

4

Complaint Narrative: Finally, two U.S. citizens had their accounts with Bank of America
blocked multiple times with no prior notice. Their credit card was closed with no notice
and they were told by their local bank branch that the bank "can't provide any information"
regarding the reasons for the closure and that they are regarded as "high risk" customers.
Later, Bank of America closed their checking and savings accounts, while Merrill Edge –
a Bank of America company – closed their retirement account with only 1-day notice.

5

6

7

8

**Complaint Date:** April 2014

9

10

Complaint Narrative: I was trying to pay my tax (I believe in April 2014) when I realized
that my checking account and credit cards were not working.  I called Bank of America
and was told that my accounts were frozen because I had dual citizenship. The issue was
resolved after a few days but it caused unnecessary stress.  I'll be happy to share my story
privately, and perhaps later publicly, if needed.

11

12

13

**Complaint Date:** Ongoing

14

Complaint Narrative: Every time I log into my account, I receive a popup asking me if I
am a dual citizen. (I am.) No one other BOA cardholder I know gets this question.

15

16

**Complaint Date:** 2015 & 2019

17

18

Complaint Narrative: I had an encounter with BofA which was truly shocking to me. I have
maintained an account with them since 2007. In 2015 while I was living in Pittsburgh, I
was contacted by BofA to verify my residence status in the US. They requested a copy of
my ID to assure I am still living in America. After faxing them a copy of my state ID, they
rejected it and said it's not acceptable. They requested me to present myself to a branch of
BofA to prove I am living in America! There was no branch of BofA in Pittsburgh and
they told me to go to Ohio to a branch of BofA! It was beyond ridiculous. They threatened
to close my account. I emptied the account proactively so that they don't steal my money
from me in the name of "vigilance against terrorism" finally after I raised hell, they
accepted my state ID and let me keep my account. Last month a friend tried to send me
300$ from Germany. And they acted as if a terror cell is contacting me . They raised so
many shenanigans with deutsche bank and asked a boatload of questions about my German
friend. And eventually after a month, they refused to accept fund transfer from Germany.
I am considering closing my account with this crooked racist bank and be done with them
forever.

19

20

21

22

23

24

25

**Complaint Date:** Estimated 2016

26

27

Complaint Narrative: In or around 2016, Bank of America froze our non-profit
organization's bank account, and demanded us to answer a series of questions about our
relationship with Iran, if we receive donations/funding from Iran, or whether we fund any

28

1    activities in Iran. Since we did not have any direct financial relations with Iran, our bank
2    account was eventually OKed.

3    **Complaint Date:** 2017

4
5    Complaint Narrative: I and my brother in law are both citizens of the U.S., while my sister
     is in permanent residence in the United States. Our bank account that we all share was
6    closed even though we complied with all of their demands such as non sense paperworks
     and many documentation that we are citizens. Finally they told us that since she doesn't
7    live permanently in United States which she does, our account will be closed. It was closed
     despite we had opened this account in 1987. Their loss and not ours. Since we opened
8    accounts in other banks.

9    **Complaint Date:** 2018

10
11   Complaint Narrative: Husband is Iranian national and US GC holder. BOA froze all
     accounts and cards, including debit card linked to a joint account with wife and a CC that
12   she is an authorized user on. Husband is not traveling and has not traveled recently. Both
     are US residents. BOA demanded additional documentation from him to release his
     accounts, and he had no access to accounts and his wife was out of town.

13

14

15   **Complaint Date:** 2017

16
     Complaint Narrative: Iranian student in USA working for a company on OPT status. Two
17   months before contacting NIAC, his wife became pregnant but they had no health insurance.
     Babak asked his brother to send him some money for medical expenses. Brother sent $9,500
18   using a legal-registered money exchange company in Iran. BOA froze checking and savings
     account after $9,500 deposited. Two weeks later they unfroze the accounts but continued to
19   hold the $9,500. Three weeks later they closed both accounts and informed Babak he may
     be referred for investigation. They continued to hold the $9,500 for about 3 months until he
20   contacted NIAC and we got BOA to issue him a check for $9,500.

21   **Complaint Date:** 2018

22

23
     Complaint Narrative: Student visa holder working in US while finishing degree. BOA
24   froze his account and blocked money despite member providing them documents regarding
     residency in the US. BOA refuses to close the account and give member his money to move
25   it to another bank. Causing member serious financial hardship.

26       60.    On online forums and social media, consumers of Iranian origin have also complained

27   of the same acts of discrimination. A sampling of statements made in (or that originated in) a private

28   immigrant advocacy Facebook group on this topic are below. Each statement was made by an

individual with a name traditionally of Iranian origin about an incident that happened with Bank of America in the United States. Note that at times Plaintiff followed-up to gather additional details from the posts, which were summarized and added to the entries below. Also note that some posts were translated from Persian. At all times, the narratives convey the sum and substance, if not the exact words, of the consumers' experience as conveyed to Plaintiff:

| Incident Date(s): 2015-2016 | Consumer State: California |
|---|---|
| Complaint Narrative: Between 2015 and 2016 they asked for my proof of residency 3 times. Every time I took my green card to the branch but then they sent me the same letter. The two branches that I visited: <br> 1) Bank of America, 2600 San Miguel Dr, Newport Beach, CA 92660 <br> Time: between Summer of 2014 and Spring of 2015 <br> 2) Bank of America Financial Center, 1510 The Alameda, San Jose, CA 95126 <br> Time: July, August, or September 2015 <br> Finally I closed both my savings and checking accounts but kept my credit card. They then sent me the same letter about my credit card which I didn't respond to and they closed my credit card. Interestingly, after they closed my credit card, they ran my credit without my consent, opened a new credit account for me and sent me a new card which I closed immediately. I never did business with them again and probably won't do in future. | |

| Incident Date(s): Approximately 2016-2018 | Consumer State: Louisiana |
|---|---|
| Complaint Narrative: They [Bank of America] rejected my [online] credit card application because I am Iranian. … I didn't keep the letter but I think it said that you were born in one of the countries to which we can't give a credit card. It also said if you have a green card or are a ciitizen send your documents for consideration. | |

| Incident Date(s): Unknown from post | Consumer State: California |
|---|---|
| Complaint Narrative: My BoA account was also closed .. with a letter saying we are closing it because of the sanctions. I didn't keep the letter though. | |

| Incident Date(s): June 2019 | Consumer State: Massachusetts |
|---|---|
| Complaint Narrative: I had an account with BoA and they closed my account for no reason and withou any warning. They closed my credit account in June 2019 in Massachusetts and said I had two weeks to remove my money from my chekcing account. The bank gave me no notification until I realized my credit card was not working anymore. I contacted the bank to ask why. The only answer they gave was that it has been our business decision to close your account. I was traveling in March that year and had updated my documents at that time. I had infromed the bank that I would be in a different state, California, so my information with them was up-to-date [when they closed the account.] | |

| **Incident Date(s):** 2014-2020 | **Consumer State:** New Mexico and California |
|---|---|

Complaint Narrative: I am an Iranian national student on F1 visa and I had faced difficulties using my bank account in Bank of America. Upon my arrival to the US, Albuquerque NM, in Fall 2014, I opened an account with BofA which included showing my traveling visa, F1 document, passport, and my admission letter. After two months, in Fall 2014, I received a mail from BofA concerning with my bank account and how I have to show that I am a resident in the US and I need to comply with OFAC which indicates that Iran is economically sanctioned. To resolve this issue, I went in person to the same BofA location that I had opened the back account, Albuquerque NM, and provided additional evidences on my legal residency in the US (SS card, apartment lease contract etc.). The employee convinced me that everything checks out I should be "fine". After two weeks my account got frozen on the same grounds of being subject to OFAC regulations. At the time two of account restriction, 2 transactions were returned with $100 fee! This included my rent which back fired and I had to pay extra since I missed the due date (The other was credit card payment). I was able to activate the account by AGAIN going in person to the same office location, Albuquerque NM. I moved to Southern California Summer 2015 and I continued to receive the same series of letters with the same "threatening" language on a regular basis (Summer 2016, Winter 2017, Spring 2018, Summer 2019, Summer 2020) and every time I used the exact same documents to prove my lawful residency in the US. In all times non of the employees were trained to understand the situation and could not help in a smooth way and on average I had to spend about 2 hours in the bank resolving the issue. This has led to many troublesome situations including having to postpone or cancel my travels fearing that my account may get frozen while being away in a conference or giving a talk at some institutes. The last time was in Summer 2020! With the pandemic and the social unrest going on I did risk the health of my housemates and myself to AGAIN go in person and resolve the same exact issue.

| **Incident Date(s):** 2016-2017 | **Consumer State:** New York |
|---|---|

Complaint Narrative: I also have similar experiences like others. Between 2016-2017 they asked for my proof of residency 2-3 times by letter or they simply deactivated my card without previous notice and when I called BOA, I was informed that I need to update my proof of residency. Every time, I took my EAD card (had not received my green card yet back then) to a branch at 5806 Broadway, The Bronx, NY 10463 and had them scanned it. I don't exactly remember if they deactivated my credit card/debit card when they were waiting for my document but I think they did. Finally, I closed my checking accounts but kept my credit card. After I took my green card to the same branch, they did not ask for a proof any more. Later, I got an email offer to get $200-$300 if I open a checking or saving account (don't remember the exact offer but something like that). I go to a branch at 8100 Forsyth Blvd, Clayton, MO 63105 with my Iranian passport and green card to take the offer and open an account. But, although now I am a green card holder, and used to have a checking account with them, they did not open an account for me because I am an Iranian and also due to sanctions! The manager of the branch ,who was originally a French guy, was so ashamed and apologetic and tried to do his best, he even went and talked to his manager and they made some calls but eventually he came back and said it was out of his control and he tried to talk to people above him but unfortunately, due to sanctions they can't open an account for Iranians. And when we asked about why I could open an account with other banks like TD bank but can't do the same with BOA, he said the system is not letting me do so.
I left the bank and promise myself never step in to another BOA branch ever again! I have

been to many other banks and opened other sort of accounts and never had any similar experience! What they are doing against Iranians are unbelievable and unjustifiable!

| Incident Date(s): Unknown from post | Consumer State: Massachusetts |
|---|---|

Complaint Narrative: same thing happened to me to and they frozen my account after I gave them all required documents for three days and it was with no warning and during a long weekend and I didn't have any other account or cash available. In a foreign country with no family around. I called them and their answers were helpless as always.

| Incident Date(s): Several years beginning 2014 | Consumer State: Texas |
|---|---|

Complaint Narrative: Dude, it became one of my annual rituals to provide extra documents for BoA, each year since 2014. A discrimination behavior which is accepted as what it is.

| Incident Date(s): Unknown from Post | Consumer State: Unknown from Post |
|---|---|

Complaint Narrative: they closed my credit card for one month late payment of after 10 years of paying all balance each month on time, without even a notice, while I had over $600 in points in same credit card that could cover the entire payment!… I still have what they reported as late payment in my credit report and this happened when I was trying to get a loan which badly affected my credit score resulting in my loan request getting rejected.

| Incident Date(s): 2013-2014 | Consumer State: Virginia |
|---|---|

Complaint Narrative: It happened to both of us, me and my husband , I sent them my green card information back then and that's was it , I still have accounts with them, and they never asked me again. My husband who I tagged him on the post, as soon as he saw the letter, I think he called them and asked why they needed his citizenship status and again I am not sure what happened since it's way back in 2013 or 2014 , but he told me that's an obvious discrimination and he closed all his accounts with them before even sending them any prove of residency.

| Incident Date(s): 2018 | Consumer State: California |
|---|---|

Complaint Narrative: About two years ago BoA canellecd my credit cards (I had two credit accounts with them). I went to the local branch in person and the people working there had no information about the reason the cards were closed. In my presence, they contacted the central office and they eventually said that the bank randomly audits the accounts held by Iranians and some other nationalities and if necessary they close the accounts. The bank representative was surprised after this phone call and apologized to me. The bank had given me no warning before! I also had no financial connections to Iran. This happened in California.

| **Incident Date(s):** Unknown from Post | **Consumer State:** Illinois |
|---|---|

> Complaint Narrative: Same thing happened to me with BoA, they closed my account after 3-4 years and was asked for some residency documents, had to go there several times to reopen it again. I don't remember exactly, I think I received a letter saying I needed to upload some residency documents or they will close the account. I did upload them but they still closed (restricted?) the account. I went to the bank branch, I think twice, and it was resolved the last ime. I know it happened to a few friends of mine too.

| **Incident Date(s):** 2014 | **Consumer State:** Texas |
|---|---|

> Complaint Narrative: BoA closed my account without a notice and blocked my money for 2 months when I was student. I even didn't have enough money to pay rent.... I opened my BoA account in Aug 2014 shortly after I came to Texas with student visa. They had a copy of my I-20 and passport. I also had one secure credit card and later a travel credit cart with BoA. Couple of months later (believe was end of 2014) my credit card was declined and I received a mail that said all my accounts at boa has been closed for a reason that cannot be disclosed with me and I will receive a check with my money. There was a number on that letter that was an auto and I could only leave a message. So I went to the local branch ( college station,TX) and asked for the $8k that it was in my account. I explained that I'm a student and I don't have any funding nor a job and I need that money to pay rent & tuition installments. They said they cannot disclose any info and offered me $200!!!! And literally kicked me out of the branchIt took them more than 7 weeks to send me a check with my money and my online access to their website was limited to only paying my credit card balance. They also mentioned in the mail that never ever I can have any sort of account with BoA.

| **Incident Date(s):** 2018 | **Consumer State:** Unknown |
|---|---|

> Complaint Narrative: I'm an F1 visa holder, having lived in the US for more than 3 years. Got an MSc in Computer Science, and I'm now an R&D Engineer working on Information Security and Cryptography. I've been a BofA customer for that entire time. After getting my Master's I got the Optional Practical Training status, which lets you work for up to 3 years after your graduation for STEM majors. The original Employment Authorization Document (EAD) is valid for a year, and you are allowed to apply for an extension up to 60 days before it's due. The average processing time for an extension application is more than 90 days. So, your work status will remain valid up to 180 days after its expiry if you have applied for an extension. Now here's where Bank of America comes in. They decided to freeze all my accounts and deny me $12K of my hard earned money, in spite of my completely legal status, just because I'm from Iran. Because I've done mostly contract work last year, I owe the IRS about $9K worth of taxes, which now I cannot pay because I don't have access to my money. I've talked to them so many times explaining the situation, from my legitimate status to the need to pay taxes. But they have been completely uncompromising. It seems to me that not only they are screwing me over, they're screwing over                                                                                                 America.
> This is the summary I wrote at that time. Because of the timing schedule for EAD Extention application, one has to use their old EAD for at least one more month. The bank would not accept this [older EAD] and said that it was expired, while legally it was still valid. The form I-20 [Student F1 status] was also among their acceptable documents; I gave them that and they still rejected it. And while my account was frozen they even dishonored my [tax] payment to the IRS which is really interesting! These events happened in early 2018. After I received my new EAD card and my accounts were unfrozen I closed them all.

| Incident Date(s): 2014-2015 | Consumer State: Unknown |
|---|---|

Complaint Narrative (transcribed from phone follow-up by Plaintiff): they refused to open a new account online/over phone and required me to go in person to the branch amid the pandemic, only because I am Iranian. I tried and could proceed if I selected other nationalities online. This is despite the fact that I held bank accounts and credit cards with bank of America for over 5 years, and had presented copies of many official documents, including my green card when opening those accounts.

| Incident Date(s): 2016 | Consumer State: Massachusetts |
|---|---|

Complaint Narrative: BoA closed my account several times in 2016 in MA when I first arrived in the states. Each time they would state my visa is expired (I have a single entry F1 visa), I would go there and explain my visa status to them, they had my I20, I94 and my school's proof of enrolment. They would tell me it's fixed and it'll take few hours for my card to start working again, which was not true. After three times I had to talk to the manager and spent hours trying fixing this issue. For months I had no access to my bank account, could not buy anything or pay for transportation. The problem got solved, which I think might be related to getting my SNN.

| Incident Date(s): Unknown | Consumer State: Unknown |
|---|---|

Complaint Narrative: This bank blocked my account in one of the worst moments in my life despite having complete documents! I eventually closed my account with them.
What happened is that my Form I-20 (student F1 status) was still valid but for less than 6 months, so the bank froze my account on its own. No other bank would do this, so I switched banks to solve this problem

| Incident Date(s): Unknown | Consumer State: Texas |
|---|---|

Complaint Narrative: I have had a same experience with BOFA, when I came to US I deposited all my money there and I gave all my documents and explained them that I am newcomer to Dallas, and I will receive my GC later this month or next. They accepted to open an account for me, but unfortunately after 2 days they suspended my account and left me with a 2-year old child without of money here. It takes 2 days that I could convince them to release my account temporarily.
I understand that they have some policy and all bank follow that policy, but when I saw that every year or even less than a year BOFA suspend my account to check my residential status (while other bank only check it at the beginning) I closed my account with them.

| Incident Date(s): 2014 | Consumer State: Florida |
|---|---|

Complaint Narrative: I moved to the US in 2014 and since then, they kept asking for my updated immigration documents every year to show I am present in the US legally. They never froze my account though.

| Incident Date(s): September 2018 and October 2019 | Consumer State: Washington |
| --- | --- |

Complaint Narrative: My husband and I both opened our first bank account in the US at BOA with student visa F-1. This branch is in  We were fine for few years, I guess they asked for some documents once in a while, and we would go to a branch and provide it. After 5 years [in September 2018], they asked my husband some documents, and he went to a branch [in Seattle at 15401 Westminster Way N, Shoreline, WA 98133] and provided all the required documents from his I-20 to Driving licence. After a while he would notice something is wrong since his automatic payment were failed. He went to a branch with his documents a few more times and every time they said oh sorry we don't know what happened, everything is fine now, and it happened again and again for 4-5 times until they actually closed all his accounts, checking, saving, and credit, with no notice. All this time my account was just fine! Earlier this year, I received a letter asking for documents with a 2 month deadline, I provided all documents immediately in a branch [in Seattle at UVillage with the address 4622 25th Ave NE, Seattle, WA 98105], and the clerk assured me every thing has been taken care of. After 6-7 weeks when I was logging into the bank portal online, there was a prompt notice that if you don't send us the documents we'll close your accounts in 1-2 weeks. Again, no email or mail notice, and if I didn't log into my online account, I wouldn't have had any idea about this. I called customer service, explained the situation, and the documents weren't available in their system for some unknown reason! Anyway, I emailed, and faxed the required documents 2-3 more times, and talked to a customer service representative every day for a week, confirming that they have received it, and it is all on-file, and my account is safe. A day after my last call which was about 5th confirmation I got from them, my credit card was suddenly closed! I talked to the customer service and some supervisors for about 5 hours that they, and they didn't even admit that this was their fault, with no apologies. By that time, I had already tried all the three ways I could have possibly sent them my documents and they still closed my credit account, after 5-6 times verbal confirmation that my account is OK. [This happened about Oct. 2019].

| Incident Date(s): January or February of 2018 | Consumer State: Florida |
| --- | --- |

Complaint Narrative: [T]he bank asked for two series of documents [in January 2018. The request came from corporate]. I turned in the second series of documents to the local branch [at 10081 W Flagler St, Miami, FL 33174] before the deadline. But a few days later I received some calls from the bank which I couldn't take because I was busy and didn't know it was from the bank. They left me a voice message saying that my account was restricted and the entire balance had been mailed to me as a check!! I went to the local branch where I had given the documents. They said apparently the documents had not reached the main office in time. Or (I believe) they had not even sent it to the main office!!

| Incident Date(s): 2012 | Consumer State: Virginia |
| --- | --- |

Complaint Narrative (from phone conversation): I entered the US in 2008 and opened accounts with BOA at that time. Had good standing with them until I received a letter telling me I had to complete documents. This happened in 2012 in Virginia. I went to the bank and was asked to provide citizenship/green card documents. I had a green card at that time. Upon research I found this request to be discriminatory and therefore refused to provide these documents. I told the bank that I would close my accounts if they insisted on this request. Since the bank insisted, I closed all of my accounts with them, including a

1

| checking, saving, and credit account. |

2

| **Incident Date(s):** Summer of 2018 and Summer of 2019 | **Consumer State:** Texas |

3

4

| Complaint Narrative: I am a student too and every year both me and my husbank get this letter asking to show immigration documents to keep the account open. |

5

| **Incident Date(s):** 2018 | **Consumer State:** Pennsylvania |

6

7

| I had a Bank of America checking account that was opened a few days after my arrival in the US (August 2013). The bank was opened in LA, California. The account opening went smooth enough. Fast forward several years later to 2018, I am in Pittsburgh, PA. The bank account and all the credit cards were closed without any reason being given to me. It was simply closed without any reasons, or at least no real reason. I cannot remember the exact reason, but it was something along the lines that "We can no longer do business with you due to internal reviews". The closure of all my credit cards also impacted my credit score quite a bit, as those were my oldest credit cards. |

8

9

10

11

12

| **Incident Date(s):** Approximately 2017 and 2018 | **Consumer State:** Texas |

13

| Complaint Narrative: They have blocked my account twice. The first time I sent them the documents [in response to a letter they sent] and they fixed it. For the second time [also in response to a letter they sent] I sent the documents online but after a while they blocked the account again for some reason while I was waiting for an important wire transfer. The issue was not resolved via phone call either and I had to take the immigration documents in person to fix it [at a branch location in downtown Austin, Texas at Congress Ave and 6th St.]. |

14

15

16

17

| **Incident Date(s):** Between 2016-2018 | **Consumer State:** California |

18

19

| Complaint Narrative: I too had a similar experience. When I was a student and close to my graduation and I was waiting for my EAD card for OPT, they once asked for documents and I gave it to them but then they blocked my account without any notice. It was blocked for about a week. I eventually closed my account with this bank. I might have kept some of my communication records with them, not sure. |

20

21

22

| **Incident Date(s):** 2020 | **Consumer State:** New York |

23

24

| Complaint Narrative: today, I took my mom to a BoA branch (I had an appointment previously) to open a checking account for her. She has a valid immigration visa (category IR5) in her passport with proof of residency in the U.S. As soon as they find out her nationality, they did not let her open any account. (I asked if they could get the bank to produce any letter/email confirming they wont open the account and why). I will email them today. Their oral response was: "Citizens of certain countries including Iran" need to provide Green Card in addition to two other IDs (Proof of residency and Valid passport) before they could have an account with BoA. |

25

26

27

28

| **Incident Date(s):** 2017-2018 | **Consumer State:** California |
|---|---|
| Complaint Narrative: BoA blocked my credit card claiming I'm a resident of Iran in their system and would not reopen until I came to a branch and showed them my proof of citizenship. [By letter], [t]hey threatened that they would close my account permanently by the end of the month if I didn't come in. Mind you, I'm a (US) citizen and have been living here in California for the past 13 years. It happened sometime in 2017 or 2018 if I'm not mistaken. SF, California. … | |

| **Incident Date(s):** 2019-2020 | **Consumer State:** Washington and California |
|---|---|
| Complaint Narrative: In December 2019 I was contacted from Bank of America for proof of residency. I took my documents to the bank (branch) a few days later (it is registered in the bank that I took the documents that day). I have a green card, by the way. My account was blocked on January 13th and two of my credit cards with this bank were closed with no nitice or letter! I went to the bank every day and the branch manager who remembered me said the bank employee had failed to upload to your documents by mistake. With the help of the branch manager and my persistent calls we forced the bank to reconsider re-opening my credit cards. I repeatedly told them in my calls that I did not want to re-apply (for credit) and did not permit a new credit inquiry. Two weeks later I received a letter stating that they were unable to open my account, and that they had done two hard inquiries, despite me having explicity said that I did not permit any hard inquiries. The letter said that the inquires were part of the process. Together with the letter there was another letter that belonged to someone else and had been sent to my address by mistake. I took this letter to the branch manager and he said I had all the rights to file a lawsuit against the bank! I closed my checking account with them and confirmed several times that it was closed. A month ago when I was going to delete the app I checked and saw that I was chared 3 maintenance fees for a closed account! I went to the bank again while I was very angry at them and the bank manager quickly removed my account and I was finally done with this horrible bank. I have a very good credit history and in these four years I have never had a credit problem such as late payment or high balance. As a result of these incidents, my credit score dropped by about 50 units and my history has decreased to one year now.

[In response to follow-up request from voice messages:] I opened my checking and a credit card in 2014 in Seattle, but since I did not use that credit account for seven months while I was gone to Iran, that credit account was closed. But it wasn't a big deal for me at that time since I had recently come to the US and was new. I opened another credit account in late 2015 and another in 2016. My checking account stayed the one opened in 2014. I had updated my driver's license and other residency info with the bank in 2016 when I opened my accounts, and no documents were [obviously] expired at that time. ... The branch manager mentioned above was actually an "Assistant Branch Manager" ... Their mistakes were that they had failed to upload my documents and had sent the account information of someone else (a man in Washington) to me in my letter envelope. The discrimination part is that they requested these additional documents and closed my account without any notice at all! And I got two hard inquiries and the account was not reopened. They offered no reasonable excuse and said we could invite you to apply again if you want. It was a big mental hassle for 1-2 months. I had opened the account in Seattle, WA and had later updated all the account info in Los Angeles, CA, where I currently live. | |

| **Incident Date(s):** Approximately 2015 | **Consumer State:** California |
|---|---|

Complaint Narrative: About five years ago the bank blocked my account with the excuse that some money was transferred from Dubai to my account. I went to the bank to asked multiple times but they did not give me a response and their behavior was very impolite. I finally went to the main branch where I had opened the account and they knew me there. They told me verbally there that the accounts of all the Iranians had been closed and/or restricted, and there was nothing that could be done. I didn't follow up seriously after that since I had recently received my green card, and went to another bank. [From Follow-up Q&A:]

- Plaintiff: Where the branches you mentioned in the same city/state? Which city and state? Did they return the money that was sent to your account and your exisiting balance?

- Consumer: No, unfortunately they had sent a letter saying the account would be closed but I was on travel at that time, so when I returned the account was closed with all the money I had in there and they never returned the money [!!]. I live in Irvine, California and went to the local branches in this city…. I had a long story with Bank of America; they took all the money in my account, in addition to about a thousand dollars that was in the account beforehand and they never gave me a proper answer.

A few months ago I received a letter form the State Treasury saying that they intended to return the money! I realized at that point that all of this was meant to harass me, because if the money actually problematic and it came from Dubai, then why is the bank now giving the money to the state controller?

-Plaintiff: Were you aware of the money or any issues?

-Consumer: Not at all. This was sent by the reputable exchange company [in Iran] that we always use to transfer money.

[Note: due to the lack of direct banking between the United States and Iran, people commonly use intermediary companies to lawfully transfer money, usually through Dubai].

| **Incident Date(s):** Unknown | **Consumer State:** Unknown |
|---|---|

Complaint Narrative: They closed my account too after asking that I send green card or ID, which I did not send. I only had a credit card with them. Interestingly, this is the only bank that treats Iraninans with such discrimination. I have accounts with 5-6 other banks and none of them have treated me like BoA.

| **Incident Date(s):** November / December 2019 | **Consumer State:** Texas |
|---|---|

Complaint Narrative: I wanted to say my personal experience with Bank of America. I had a credit card with this bank for four years with $10,000 credit limit. I had no late payments and my credit score is 770. Last year, I did not use my credit card for a few months because I was working on my PhD dissertation and defense, until I received a letter stating that your credit account has been closed!! I emphasize again that I had no late payments and my credit score is excellent. When I called them and asked why they closed my account they said we do not have access to this account information because it has been closed and you

| | |
|---|---|
| can apply again if you want a credit card!! | |

| **Incident Date(s):** 2014 | **Consumer State:** California |
|---|---|

Complaint Narrative: [I]n response to BOA lawsuit here is my story: They froze my husband and my account in 2014, even though we are both US citizen and my husband is born in US and he had opened his BOA account the first time with his US passport. They asked us to show them our Iranian passport and after scanning it, they unfroze our accounts.

61.     This trend, and the stories it has produced, prompted New Jersey Senator Robert Menendez to send a formal inquiry to the Chief Executive Officer of Defendant, Brian Moynihan. *See* Letter from Robert Menendez and Catherine Cortez Mastro to Brian Moynihan dated Oct. 1 2018 (the "Menendez Letter"), *available at* https://www.menendez.senate.gov/imo/media/doc/Letter%20to%20Bank%20of%20America.pdf (*last visited* August 25, 2021). The letter begins by stating that "We are alarmed by recent reports that Bank of America is requesting customers' citizenship status, and unjustly freezing customers' accounts." *Id.* at 1.

62.     The Menendez Letter listed a number of questions for Defendants, including: how many accounts Defendant has frozen over questions of citizenship; how Defendant identifies individuals from whom it requests additional citizenship information; what Defendant considers to be a satisfactory answer to its inquiries; and whether Defendant reimburses individuals who have incurred bounced check, late payment, or other fees because their accounts were frozen or closed. *Id.* at 2-3.

### V.     CLASS ALLEGATIONS

63.     Plaintiff brings this action and all counts, as set forth below, on behalf of himself and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Class consists of the following **Nationwide Class** defined as:

**Nationwide Class**:

All present or former Bank of America ("BANA") credit-card or checking-account holders whose accounts were restricted or closed by BANA, and for whom BANA's records or correspondence with the accountholder show the account was restricted or closed due to inadequate proof of residency, and who were citizens of the Islamic Republic of Iran and were present in the United States on the date(s) when the restriction or closure was imposed.

64.     In addition to and/or in the alternative to claims asserted on behalf of the Nationwide

Class, Plaintiff asserts the claims alleged in Count I on behalf of the following **Nationwide Subclass**

**Nationwide Subclass:**

All present or former Bank of America ("BANA") credit card account holders whose accounts were restricted or closed by BANA, and for whom BANA's records or correspondence with the accountholder show that the account was restricted or closed due to inadequate proof of residency, and who were citizens of the Islamic Republic of Iran and were present in the United States on the date(s) when the restriction or closure was imposed.

65.   In addition to and/or in the alternative to claims asserted on behalf of the Nationwide Class and Subclass, Plaintiff asserts claims on behalf of the following **California Subclass**:

**California Subclass:**

All present or former Bank of America ("BANA") credit-card or checking-account holders whose accounts were restricted or closed by BANA, and for whom BANA's records or correspondence with the accountholder show the account was restricted or closed due to inadequate proof of residency, and who were citizens of the Islamic Republic of Iran and were present in California on the date(s) when the restriction or closure was imposed.

66.   The Nationwide Class, Nationwide Subclass, and the California Subclass are referred to together herein as the "Class." Plaintiff reserves the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

67.   The Class excludes the following: Defendant, its affiliates, and its current and former employees, officers and directors, and the Judge assigned to this case.

68.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

69.   This action is properly brought as a class action for the following reasons:

70.   *Numerosity*: The Class is so numerous that joinder of all members is impracticable. At least tens of thousands of Class members have been subjected to Defendant's conduct. The class is ascertainable by reference to records in the possession of Defendant.

71.   *Commonality and Predominance*: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions affecting individual members of the Class and include:

a.   Whether the Defendant targeted members of the Class based on their race or other protected characteristics;

b.   Whether Defendant sent notice and explanation of adverse actions to the Class members as required by ECOA;

c.   Whether Defendant violated civil rights statutes and the other claims asserted herein.

72.   *Typicality*: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in regard to the banking and credit accounts of the Class. All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein. Plaintiff and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members.  Plaintiff and all Class members sustained economic injuries including, but not limited to, ascertainable losses arising out of Defendant's course of conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all absent Class members.

73.   *Adequacy of Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, violations of civil rights laws and claims of discrimination.

74.   *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court

system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

75.     *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

76.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT**
**15 U.S.C. § 1691 *ET SEQ.***
***(On behalf of the Nationwide Subclass)***

77.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

78.     Congress enacted the Equal Credit Opportunity Act making it "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a).

79.     Plaintiff, Mohammad Farshad Abdollah Nia, is a natural person and an "applicant" as defined by the ECOA.

80.     The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Id.*

81.     Plaintiff also meets the definition of "applicant" supplied by the Bureau of Consumer Financial Protection (the "Bureau"). 12 C.F.R. § 202.2. "Applicant" is defined by the Bureau as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." *Id.*

82.     The Bureau's definition of "applicant" is applicable here based on the authority granted by Congress to the agency to promulgate regulations to achieve the goals of the ECOA. 15 U.S.C. § 1691b. Additionally, the statute provides that courts should defer to the interpretation of the Bureau regarding any provision of the ECOA "as if that agency were the only agency authorized to apply, enforce, interpret, or administer" it. *Id.*, § 1691b(g).

83.     Pursuant to the ECOA, the broader definition of "applicant" supplied by the Bureau is given deference, and thus applies to Plaintiff as a person who has requested and received credit from Defendant and has become contractually liable for that credit.

84.     Because Plaintiff would continue to remain contractually liable for any balance on his credit account, Plaintiff meets the definition of an applicant.

85.     The Defendant is a "creditor" as defined by the ECOA. Defendant "regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e).

86.     The action of Defendant in closing the credit card accounts of Plaintiff qualifies as an "adverse action" as defined by the ECOA, *i.e.*, "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

87.     As described above, Defendant has intentionally, knowingly, and purposefully engaged in a number of discriminatory practices that deny persons of Iranian or Middle Eastern descent access to credit through Defendant's business based on their race, religion, and/or national origin.

88.     The ECOA also requires creditors to notify and explain any adverse decision in a timely fashion:

> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—
>
> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
>
> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. . . .
>
> (3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

15 U.S.C. § 1691(d).

89.     A notice requirement was included in the statute as one way to ensure that creditors do not unlawfully act discriminatorily. *Schlegal v. Wells Fargo*, 720 F.3d 1204, 1210 (9th Cir. 2013).

90.     While the ECOA was enacted for the purpose of preventing discrimination in the granting of credit by creditors, affirmative evidence of discrimination is not necessary to state a claim when a creditor fails to meet the statute's notice requirement. *Costa v. Mauro Chevrolet, Inc, et. al.*, 390 F. Supp. 2d 720 (N.D. Ill. 2005).

91.     In *Costa*, the court held that "without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA." *Id.* at 728. Additionally, the court reasoned that "because § 1691(d) of the ECOA sets forth a notification requirement separate and apart from the statute's antidiscrimination provisions . . . [the plaintiff's] allegation that [the defendant] failed to provide written notification of an adverse credit action is sufficient to establish an ECOA claim." *Id.* at 729.

92.     Similarly, here, Defendant's failure to provide a statement of reasons upon Plaintiff's request regarding closure of his credit card account is sufficient to create a cause of action under the ECOA. § 1691(d).

93.     Defendant did not inform Plaintiff of its adverse action in writing, send him a statement of specific reasons explaining the closure of his credit card account, or even inform him of his right to request a statement of specific reasons for the closure of his account. In fact, when Plaintiff inquired about the reasons for his account's closure, Defendant's representative told him that Defendant did not need to do business with him.

94.     A statement of reasons meets the requirements of the ECOA "only if it contains the specific reasons for adverse action taken." § 1691(d)(3). Defendant provided no specific reasons at all for the closure of Plaintiff's credit card accounts other than that he had provided insufficient documentation. But this explanation rings hollow given that Defendant's own documents state that a Form I-797C is sufficient to prove residency. Additionally, there is no basis for Defendant's assertion that the Form I-797C expires or otherwise needs renewal after six months. Given these facts, Defendant's stated reasons for closing Mr. Nia's account appear to be mere pretext for discrimination

based on Mr. Nia's race, religion, and/or national origin.

95.     The Ninth Circuit has followed the plain meaning of "revocation" and held that cancelling the right to defer payment of a debt rightfully gives rise to a cause of action under the ECOA. *Schlegal*, 720 F.3d at 1211 (9th Cir. 2013). There, the court held that the defendant bank failed to abide by the terms of a loan modification made between the parties, and the court held that this constituted an adverse action under the statute. *Id.*

96.     Similarly, here, Defendant revoked Plaintiff's right to defer payment of a debt by closing Plaintiff's credit card accounts and failing to provide a sufficient statement of reasons for doing so.

97.     The written communications from Defendant, were defective and in violation of the ECOA because they failed to even mention that Plaintiff's account might be closed, much less provide a statement of specific reasons as to why Defendant elected to close his credit card account.

98.     Due to Defendant's failure to provide a statement of reasons for its decision to take adverse action against Mr. Nia, he is entitled to relief under the ECOA.

99.     Congress has created civil liability for any creditor that fails to comply with the terms of the ECOA. 15 U.S.C. § 1691e(a). A creditor who does not meet the requirements imposed by the act becomes "liable to the aggrieved applicant for any actual damages sustained by such applicant. *Id.* Additionally, punitive damages may be granted to up to $10,000. *Id.*, § 1691e(b).

100.     In addition to actual damages, aggrieved applicants may be entitled to equitable and declaratory relief. § 1691e(c). They can also collect reasonable attorneys' fees. 15 U.S.C. § 1691e(d).

**SECOND CAUSE OF ACTION**
**VIOLATION OF PLAINTIFF'S EQUAL RIGHTS**
**42 U.S.C. § 1981**
***(On behalf of the Nationwide Class)***

101.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

102.     Federal law provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

1    property as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties,

2    taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

3        103.    The right to "make and enforce contracts" is defined as including the "making,

4    performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges,

5    terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

6        104.    Further, "the rights protected by this section are protected against impairment by

7    nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

8        105.    In order to assert a claim under § 1981, a plaintiff must:

9            . . . initially identify an impaired contractual relationship under which the
             plaintiff has rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476,
10           126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006). The plaintiff must also
             plausibly allege that the defendant impaired that relationship on account of
11           intentional discrimination. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pa.*,
             458 U.S. 375, 391, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982) (holding that
12           "§1981 . . . can be violated only by purposeful discrimination").

13   *Astre v. McQuaid*, No. 18-17231, 2020 U.S. App. LEXIS 9297, at *2 (9th Cir. Mar. 25, 2020).

14       106.    Plaintiff's complaint more than adequately pleads a prima facie discrimination claim

15   under Section 1981.

16       107.    Defendant here acted discriminatorily by closing Plaintiff's credit card account,

17   thereby denying him the equal opportunity to enjoy the benefits of his contractual relationship. Mr.

18   Nia was involved in a contractual relationship with Defendant through his credit card account, which

19   Defendant severed for discriminatory purposes. This act of discrimination was intentional and based

20   on Plaintiff's national origin. As an immigrant from Iran, Mr. Nia was targeted by Defendant in clear

21   violation of federal law.

22       108.    The allegation that Plaintiff's accounts were closed for discriminatory purposes is

23   based on: (1) the fact that Defendant's stated reasons for closing Mr. Nia's account appear to be

24   arbitrary and even nonsensical (*i.e.*, claiming that his Form I-797C had expired when it was less than

25   six months old); (2) the fact that Defendant elected not to provide any written explanation for Mr.

26   Nia's account closure in violation of ECOA; and (3) evidence of Defendant's pattern of similar

27   behaviour against persons of Iranian or Middle Eastern origin.

28

**THIRD CAUSE OF ACTION**
**RACE, ANCESTRY, CITIZENSHIP, AND IMMIGRATION STATUS DISCRIMINATION**
**UNRUH CIVIL RIGHTS ACT, CAL. CIVIL CODE §§ 51, 52(a)**
*(On behalf of the California Subclass)*

109.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

110.    The Unruh Act provides that "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. 3  Code § 51(b).

111.    "The purpose of the [Unruh] Act is to create and preserve a non-discriminatory environment in California business establishments by banishing or eradicating the arbitrary, invidious discrimination by such establishments. The Act stands as a bulwark protecting each person's inherent right to full and equal access to all business establishments. In enforcing the act, courts must consider its broad remedial purpose and overarching goal of deterring discriminatory practices by businesses. The act must be construed liberally in order to carry out its purpose." *White v. Square, Inc.*, 7 Cal. 5th 1019, 1025 (2019).

112.    Defendant is a business establishment under the Unruh Act, because: it has a fixed location of business in California; it has an online place of business that sells services to consumers throughout California; its primary purpose and goal in operating its business is to conduct business, generate revenue, and earn profit; and it earns millions of dollars in revenues from its business activities in California.

113.    As described above, Defendant has intentionally, knowingly, and purposefully engaged in a number of discriminatory practices that deny persons of Middle Eastern or Iranian descent the full and equal accommodations, advantages, facilities, and services of Defendant's business based on their race, religion, ancestry, citizenship, and/or immigration status, including but not limited: to grouping and targeting them for harassing demands and threats of account restriction and/or closure; restricting

and closing their accounts and thereby excluding them from receiving financial services; and denying them the benefits of Defendant's services, including, but not limited to, lost accrued credit card reward points.

114.    Defendant is liable to Plaintiff and the members of the California Subclass for statutory damages pursuant to section 52(a) of the California Civil Code for each and every offense, as well as attorneys' fees, costs, and expenses incurred in bringing this action.

115.    Plaintiff is further entitled to all other legal and equitable relief available, including injunctive relief on behalf of himself and the California Subclass.

**FOURTH CAUSE OF ACTION**
**RACE, ANCESTRY, CITIZENSHIP, AND IMMIGRATION STATUS DISCRIMINATION**
**UNRUH CIVIL RIGHTS ACT, CAL. CIVIL CODE §§ 51.5, 52(a)**
*(On behalf of the California Subclass)*

116.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

117.    Section 51.5 of the California Civil Code provides that "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51 . . . because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics."

118.    Through the actions described above, Defendant has intentionally discriminated against, boycotted, and/or refused to provide services to persons of Middle Eastern or Iranian descent based on their race, religion, ancestry, citizenship, and/or immigration status, including by restricting and closing their banking and/or credit accounts for no legitimate reason.

119.    Defendant is liable to Plaintiff and the members of the California Subclass for statutory damages pursuant to section 52(a) of the California Civil Code for each and every offense, as well as attorneys' fees, costs, and expenses incurred in bringing this action.

120.    Plaintiff is further entitled to all other legal and equitable relief available, including injunctive relief on behalf of himself and the California Subclass.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200-17210**
***(On behalf of the California Subclass)***

121.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

122.     The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendant's conduct violates each of these prohibitions.

**Unlawful Conduct**

123.     Defendant's conduct is unlawful because, as set forth herein, it violates Title VII, ECOA the Civil Rights Act of 1866, and the California Unruh Civil Rights Act, among other laws.

**Unfair Conduct**

124.     Defendant's conduct is unfair because it violated state and federal public policy, including those declared under civil rights law, which demand equal rights and treatment under the law and under ECOA, which requires a satisfactory written explanation for adverse credit actions.

125.     Defendant acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

   a. Targeting Plaintiff and California Subclass members to impose arbitrary and onerous demands that result in account restriction and/or closure because of their race, religion, ancestry, citizenship, and/or immigration status;

   b. Misrepresenting to Plaintiff and California Subclass members the reasons for the imposition of arbitrary and onerous demands on their accounts as well as the reasons that their accounts become restricted and/or closed; and

      c.   Failing to provide a truthful written communication that states the accounts of Plaintiff and California Subclass members will be restricted and/or closed and the reasons for the restriction and/or closure

126.    The gravity of the harm resulting from Defendant's unfair conduct outweighs any potential utility of the conduct. The practice of discrimination has gravely harmed Plaintiff, the California Subclass members, and the public at large with no countervailing benefit.

127.    To the extent Defendant contends that its action were as a result of OFAC compliance, there are reasonably available alternatives that its competitors use and that would have served Defendant's business interests without harming Plaintiff and California Subclass members.

128.    The harm from Defendant's unfair conduct was not reasonably avoidable by consumers. Plaintiff and the California Subclass did not know and could not have known that Defendant would discriminate against them and in the manner that it did.

### Fraudulent Conduct

129.    Defendant's conduct is fraudulent in violation of the UCL. Defendant's fraudulent acts include knowingly misrepresenting to, and concealing from, Plaintiff and the California Subclass the true, discriminatory reasons for restricting and/or closing their accounts.

130.    Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the California Subclass to spend significant time and money to comply with arbitrary, onerous, and pretextual requirements imposed by Defendant under the false promise that compliance would keep the accounts open.

131.    At all relevant times, Defendant had a duty to disclose its discriminatory practices because it had superior and exclusive knowledge of the practices, which affects the central functionality of the accounts (e.g., remaining open for use).

132.    Accordingly, Plaintiff and the California Subclass have suffered injuries in fact, including lost money, rewards points, and time, as a result of Defendant's unlawful, unfair, and

fraudulent acts. Absent these acts, the accounts of Plaintiff and the California Subclass would have remained open and Plaintiff and the California Subclass would have retained their money, rewards points, and lost time.

133.    Plaintiff and the California Subclass seek appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Defendant from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiff and the California Subclass any money and rewards points Defendant acquired by its unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

## VI.    RELIEF SOUGHT

**WHEREFORE**, Plaintiff prays for judgment as follows:

A.    Determine that the claims alleged herein may be maintained as a class action under and issue an order certifying the Class(es) as defined above;

B.    Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

C.    Declare that the practices complained of herein are unlawful;

D.    Enter an order permanently enjoining Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from continuing to engage in the unlawful, unfair, and fraudulent acts complained of herein;

E.    Award actual damages pursuant to 15 U.S.C. § 1691e(a); Cal. Civ. Code § 52(2); and other applicable law.

F.    Award punitive damages pursuant to pursuant to 15 U.S.C. § 1691e(b); 42 U.S.C. § 1981a(b)(1); Cal. Civ. Code § 52(b); and other applicable law;

G.    Award statutory damages;

H.    Award pre-judgment and post-judgment interest on such monetary relief;

I.    Award equitable relief pursuant to 15 U.S.C. § 1691e(c); Cal. Bus. & Prof. Code § 17200; and other applicable law.

J.    Award declaratory relief including by finding that Defendant violated the ECOA and acted discriminatorily;

1        K.      Enter a judgment in favor of Plaintiff against Defendant for an amount of damages to

2                be determined at trial;

3        L.      Award Plaintiff attorneys' costs and fees;

4        M.     Appoint a monitor to ensure that Defendant complies with the injunction provisions

5                of any decree that the Court orders; and

6        N.      Grant such further relief that this Court deems appropriate.

## VII.   JURY DEMAND

Plaintiff and the Class members hereby demand trial by jury of all issues triable as of right by jury.

Dated: February 23, 2023

By: */s/ Matthew A. Smith*

Matthew A. Smith (CA No. 309392)
**MIGLIACCIO & RATHOD LLP**
201 Spear St, Ste 1100
San Francisco, California 94105
Tel: (831) 687-8255
*msmith@classlawdc.com*

Nicholas Migliaccio, *pro hac vice*
Jason Rathod, *pro hac vice*
412 H St. NE
Washington, D.C. 20002
Tel: (202) 470-3520
Fax: (202) 800-2730
*nmigliaccio@classlawdc.com*
*jrathod@classlawdc.com*

Benjamin I. Siminou (CA No. 254815)
**SINGLETON SCHREIBER, LLP**
591 Camino de la Reina, Ste. 1025
San Diego, California 92108
Tel. (619) 704-3288
*bsiminou@singletonschreiber.com*

*Attorneys for Plaintiff*