UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mohammad Farshad Abdollah Nia,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　　　　　　　Defendant. | Case No.: 21-cv-01799-BAS-BGS<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL**<br><br>**[ECF 38]** |

On January 17, 2023, at the Court's instruction, Plaintiff, Mohammad Farshad Abdollah Nia, moved to compel responses to Requests for Production 4, 6, 8, 9, and 41 in his Amended First Set of Requests for Production of Documents (RFPs), to which Defendant, Bank of America, N.A., had objected on November 21, 2023.[1] (ECF 38 at 1.)

**I. Plaintiff's RFPs 4, 6, 8, 9, and 41**

RFP 4 generally seeks documents identifying all transactions of accountholders in the last six months before the accountholder's account was closed or suspended, including information about the location of the transaction. (*See* ECF 38-4 at 12-13.) RFPs 6, 8, and 9 seek Defendant's communications to Iranian-citizen accountholders that relate to establishing residency in the United States or notify them of requirements or failures to submit residency documentation. (*See* ECF 38-4, 13-14.) RFP 41 seeks "[a]ll records of communications between you and Plaintiff or between you and Class Members, including records and transcriptions of telephone calls." (*See* ECF 38-4 at 26.)

---

[1] On February 22, 2023, the District Court granted Plaintiff's motion for leave to amend his complaint, and on February 23, 2023, Plaintiff filed his First Amended Complaint (FAC). (ECF 46-47.) Defendant answered on March 9, 2023. (ECF 51.)

Plaintiff agrees to narrow RFP 4 to all such communications that relate to the suspension or closure of the Class Members' accounts because of failure to submit proof of residency. (*See* ECF 38-1 at 11.)

### A. Scope of Discovery: Relevance and Proportionality

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "District courts have broad discretion in controlling discovery" and "in determining relevancy." *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002), and *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)).

Following the 2015 Amendments to Rule 26, it is clear that "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). "The court's responsibility, using all the information provided by the parties, is to consider . . . [undue burden or expense and importance of information sought,] and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. In deciding whether a request is unduly burdensome, a court must balance the burden to the responding party against the benefit to the party seeking the discovery. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) (collecting cases).

Rule 26(b)(2) also requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the

party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

### B. Relevance of RFPs 6, 8, 9, and 41

Plaintiff's RFPs 6, 8, and 9 seek Defendant's communications to Iranian citizen accountholders that relate to establishing residency in the United States or notify them of requirements or failures to submit residency documentation. (ECF 38-4 at 12-13.) Plaintiff's RFP 41 seeks "[a]ll records of communications between you and Plaintiff or between you and Class Members, including records and transcriptions of telephone calls." (ECF 38-4 at 24-25.)

Plaintiff argues the non-template communications are relevant to the Equal Credit Opportunity Act (ECOA), 42 U.S.C. § 1981, the California Unruh Civil Rights Act and California Unfair Competition Law claims. (*Id.*) Plaintiff also argues that proof of statements similar to those Plaintiff alleges were made to him is relevant to show class members' applications were denied pursuant to a discriminatory policy and that Plaintiff's claims are typical of the class.[2] (*Id.* at 12-13.) These non-template communications are relevant to the merits of Plaintiff's UCL claims that Defendant misrepresents the requirements of its proof of residency policies and to establish the class-wide uniformity and typicality of the representations. (*Id.* at 14.)

Defendant argues the RFP class definition is overly broad and hence the discovery requests are overly broad. (ECF 43 at 7.)

The class as defined in Plaintiff's RFPs is the following:

> 'Class Member' or 'Class Members,' for purposes of this First Set of Requests, means current or former Bank of America credit or checking account holders who were known to BANA to be, or suspected by BANA of being, current or former Iranian citizens.

---

[2] The deadline to file a motion for class certification in this case is May 5, 2023. (*See* ECF 31 at 6.)

> For purposes of this definition, 'suspected by BANA of being' includes all credit or checking account holders who were evaluated, scrutinized, or monitored in any way by BANA on the basis of their actual or potential residence in, financial activity in, or other association with the Islamic Republic of Iran.

(ECF 38-4 at 4.) RFPs 6, 8, 9, and 41 incorporate the RFP class definition. (*See* 38-4 at 13-14, 25-26.) Thus, the broad definition of "Class Members" from the RFPs applies to RFPs 6, 8, 9, and 41.[3]

As the Court noted, Plaintiff was granted leave to and did file a FAC after filing this motion. (See ECF at 46-47.) Plaintiff's FAC defines the Nationwide Class and California Subclass differently than the operative complaint at the time Plaintiff filed this motion had defined those classes.[4] Because Plaintiff's FAC is the operative complaint, the Court cites to it.

Plaintiff's FAC defines the Nationwide Class as,

> All present or former Bank of America ("BANA") credit-card or checking-account holders whose accounts were restricted or closed by BANA, and for whom BANA's records or correspondence with the accountholder show the account was restricted or closed due to inadequate proof of residency, and who were citizens of the Islamic Republic of Iran and were present in the United States on the date(s) when the restriction or closure was imposed.

---

[3] RFP 4 generally seeks documents identifying all transactions of accountholders in the last six months before the accountholder's account was closed or suspended, including information about the location of the transaction. (*See* ECF 38-4 at 12-13.) RFP 4, then, narrows the scope of the RFP class definition by including only Plaintiff and all Class Members "whose credit or checking accounts were closed or suspended." (ECF 38-4 at 13.)

[4] Plaintiff's Complaint defines the Nationwide Class as, "All present or former Bank of America credit card or checking account holders with a first or last name of Iranian or Middle Eastern origin who had an account closed within six months after Bank of America sent a request for documents establishing residency in the United States (the "Nationwide Class")." (ECF 1-2 at 31.)

(Am. Compl. ¶ 63; *see also* ECF 47 at 29.) Plaintiff's FAC defines the Nationwide Subclass[5] as,

> All present or former Bank of America ("BANA") credit card account holders whose accounts were restricted or closed by BANA, and for whom BANA's records or correspondence with the accountholder show that the account was restricted or closed due to inadequate proof of residency, and who were citizens of the Islamic Republic of Iran and were present in the United States on the date(s) when the restriction or closure was imposed.

(Am. Compl. ¶ 64; *see also* ECF 47 at 30.) Plaintiff's FAC defines the California Subclass as,

> All present or former Bank of America ("BANA") credit-card or checking-account holders whose accounts were restricted or closed by BANA, and for whom BANA's records or correspondence with the accountholder show the account was restricted or closed due to inadequate proof of residency, and who were citizens of the Islamic Republic of Iran and were present in California on the date(s) when the restriction or closure was imposed.

(Am. Compl. ¶ 65; *see also* ECF 47 at 30.)

Plaintiff's FAC defines class to include accountholders whose accounts were closed *or restricted at any time*, due to inadequate proof of residency and who were *present in the United States on the date the restriction or closure was imposed*. (*See* Am. Compl. ¶¶ 63, 65; *see also* ECF 47 at 28-29.) Thus, the FAC class definition appears to be both broader than the original complaint's class definition[6]—it now includes restricted

---

[5] Plaintiff's Amended Complaint adds a "Nationwide Subclass." (Am. Compl. ¶ 64; *see also* ECF 47 at 30.)

[6] Again, Plaintiff's Complaint defines the Nationwide Class as, "All present or former Bank of America credit card or checking account holders with a first or last name of Iranian or Middle Eastern origin who had an account closed within six months after Bank of America sent a request for documents establishing residency in the United States (the "Nationwide Class")." (ECF 1-2 at 31.)

accounts and closed accounts—and narrower than the original complaint class definition—it includes only those accountholders present in the United States on the date the restriction or closure was imposed. (*Compare* Compl. ¶¶ 2-3, and Am. Compl. ¶¶ 63, 65.)

As regards relevance, the discovery may show class members experienced a similar course of conduct. This is relevant to show typicality. *See In re Outlaw Lab'ys, LP Litig.*, No. 18CV840 GPC (BGS), 2020 WL 1083403, at *12 (S.D. Cal. Mar. 5, 2020) (holding that showing that class members experienced a similar course of conduct by the opposing party is relevant to show typicality, i.e. class members suffered the same event or practice or course of conduct that gave rise to the claims of other class members and their claims were based on the same legal theory).

Further, the Court concludes that the requested discovery is also relevant to show whether Defendant complied or not with ECOA's notice requirement. It is also relevant to show whether Defendant discriminated against other class members as Plaintiff has alleged in his FAC or made similar alleged misrepresentations to other class members. In sum, this discovery is potentially relevant to Plaintiff's claims.

**C. Proportionality of RFPs 6, 8, 9, and 41**

Plaintiff requests all written communications sent to Iranian account holders. (ECF 38-1 at 11.) Defendant has provided templates used for all written communications. (ECF 43 at 9.) Defendant has proffered that all written communications come from the templates and argues that to provide the actual written communications would be duplicative and costly. (*Id.*) Plaintiff argues that the templates do not demonstrate whether the Defendant failed to send ECOA-mandated notifications of adverse action. (ECF 38-1 at 12.) He also claims that the templates sent do not match what was actually sent to the accountholders. (*Id.*)

The Court has found that written communications are relevant to Plaintiff's causes of action. Defendant suggests that a Federal Rule of Civil Procedure 30(b)(6) witness or interrogatories are less intrusive methods. While the Court agrees that there may be

duplicative discovery, the Court finds that neither a Rule 30(b)(6) witness nor an interrogatory will cover the actual communications sent to the account holders.

Plaintiff also seeks non-template communications from phone calls. (ECF 38-1 at 11.) He alleges that discriminatory comments and comments contradictory to the written communications were made to him. (*Id.* at 12.) He argues that proof of similar statements supports his allegations. (*Id.* at 12-13.)

The Court has found that these communications are relevant. Defendant concedes that unlike the written communications, recordings of phone calls would include varied content. (ECF 43 at 11.) However, Defendant argues that identifying these recordings would entail production of thousands of hours of them. (*Id.*) He argues such would cause undue burden such that expense of collecting and redacting these communications significantly outweighs Plaintiff's benefit. (*Id.* at 12.) Defendant notes that without the six-month provision in the original complaint, it would have to review communications to every Iranian-citizen accountholder, which Defendant estimates would involve reviewing communications of 33,500 Iranian-citizen accountholders since 2016. (*Id.*)

The Court finds Plaintiff's RFPs 6, 8, 9, and 41 are overly broad, and limits Plaintiff's RFPs to communications to all present or former Iranian citizen Bank of America credit card or checking account holders who had an account restricted or closed and who were present in the United States on the date(s) when the restriction or closure was imposed. This is the class as defined in Plaintiff's FAC. (*See* ECF 47 at 29-30.)

Defendant estimates there are 2700 closed Iranian accounts based on the proposed class in Plaintiff's original complaint,[7] which was Iranian-citizen accountholders whose accounts were closed for failure to submit residency documentation (ECF 43 at 13),

---

[7] Again, Plaintiff's original complaint defines class to include accountholders whose accounts were closed within six months of Defendant sending a request for proof of residency, and Plaintiff's FAC defines class to include accountholders whose accounts were closed *or restricted any time*, due to inadequate proof of residency and who were *present in the United States on the date the restriction or closure was imposed*.

accountholders whose "account[s] closed within six months after [Defendant] sent a request for documents establishing residency" (*see* ECF 1 at 2-3). (ECF 43 at 13.)

|  | **RFP Class** | **Complaint Class** | **20% of Complaint Class** | **Amended Complaint Class** |
|---|---|---|---|---|
| **Total Class Size** | 33,500 | 2,700 | 540 (2,700 x .2) | Unknown |
| **Total Written Communications** (30) | 1,005,000 (30 x 33,500) | 81,000 (30 x 2,700) | 16,200 (30 x 540) | Unknown |
| **Total Phone Calls** (12) | 402,000 (12 x 33,500) | 32,400 (12 x 2,700) | 6,480 (12 x 540) | Unknown |

(ECF 43 at 15.)

Plaintiff has proposed that if this Court is persuaded by Defendant's arguments regarding the burden to produce the discovery sought, the Court order that Defendant produce a sampling of 20% of the Iranian-citizen accountholders whose accounts were closed for failure to submit residency documentation (ECF 38-1 at 16). Those accountholders are represented by the 540 figure above.

Defendant notes that vendor costs to process, review, redact, and produce the proposed sample—20% of the 2,700 closed accounts, or 540 closed accounts—are significant. (ECF 43 at 15.) For the written communications from the proposed sample, the cost is between $33,300 and $37,300. (*Id.* at 16; *see also* Decl. of Cheryl Cote in Support of Defendant's Opposition to Plaintiff's Motion to Compel, Attachment #3 [ECF 43-3 at 7-8].) For the phone call communications from the proposed sample, the cost is between $66,100 and $87,600. (*Id.* at 16; *see also* Cote Decl. ECF 43-3 at 7-8.)

The Court notes that Plaintiff's proposal was made when the original complaint was operative. With the new class definition in the FAC, it is unclear to this Court what an accurate estimate of closed and restricted accounts would be. In fact, Defendant notes that "[T]he cost [to produce written communications and phone calls] could potentially

double if the figures were adjusted to also include Iranian-citizen Accountholders whose accounts were . . . restricted but not closed." (ECF 43 at 16 n.6, 8.) Based on Defendant's estimate, then, the FAC class could be approximately 5,400.

Given the burden on the Defendant to produce this discovery, the Court finds a 10% random sample size to be sufficient and reasonable in light of the estimated class size indicated by Defendant if the figures were adjusted to also include Iranian-citizen Accountholders whose accounts were restricted but not closed. Thus, Defendant must produce the requested discovery in RFPs 6, 8, 9, and 41 for 10% of the FAC class. *See Talavera v. Sun Maid Growers of Cal.*, 15-cv-00842-AWI-SAB, 2017 WL 495635, at *4 (E.D. Cal. Feb. 6, 2017) (ordering a 10% sample in a putative class of 5,309); see also *Tinnin v. Sutter Valley Med. Found.*, No. 1:20-cv-00482-NONE-EPG, 2021 WL 1315435 (E.D. Cal. Apr. 7, 2021) (ordering that the plaintiff produce the requested discovery for 20% of the class of 7,400); *Aldapa v. Fowler Packing Co.*, 310 F.R.D. 583, 589 (E.D. Cal. Oct. 29, 2015) (ordering production of discovery related to 25% of employees); *Brum v. MarketSource, Inc.*, No. No. 2:17-cv-241-JAM-EFB, 2018 WL 3861558, at *4-6 (E.D. Cal. Aug. 14, 2018) (ordering discovery for 10% of wage statements and 30% of electronic time and payroll records for class of 7,400); *Romo v. GMRI, Inc.*, No. EDCV-12-0715-JLQ, 2013 WL 11310656, at *16-17 (ordering a 20% sample in a putative class of 21,000).

**II. RFP 4 – Customer Transaction Data**

Plaintiff's RFP 4 in pertinent part requests all transactions undertaken by account holders in the last six months before the account was closed, including information concerning the location of the transactions. (ECF 38-4 at 11-12.)

Plaintiff contends that the occurrence of the credit transaction by itself indicates that the card user was not located in Iran. (ECF 38-1, at 17.) Plaintiff, however, notes that technical restrictions on the use of credit cards from Iran would prevent any of these transactions from occurring if the accountholder was in Iran. (*Id.* at 13.) Plaintiff argues the discovery is relevant to show Defendant adhered to the practice of applying its proof

of residency requirements to Iranian citizens while they were not located in Iran. (*Id.* at 12.) It is also relevant to show Plaintiff's claims are typical to the class members like Plaintiff who were not in Iran when their accounts were closed. (*Id.* at 13.)

Defendant argues that the transactional data is not relevant. (ECF 43 at 17.) The issue of whether the account holders used their accounts while in Iran is not contested. (*Id.*) Transactions to and from Iran are prohibited by law and cannot occur. (*Id.*) Defendant has not contended that any class member was conducting transactions in Iran. (*Id.*) Defendant's policy is to establish where the account holder is ordinarily a resident, not where the account holder conducted transactions. (*Id.* at 18.) The proof of residency documentation is to show that the account holder is ordinarily a resident of the United States. (*Id.*) Defendant's proof of residency requirements are applied to account holders who are not residents in Iran. (*Id.*) Defendant also claims undue burden were this discovery ordered. (*See id.* at 19 ("[I]t would cost Defendant between $30,530 and $41,760 to produce transactional data for the closed accounts").)

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Court finds the requested discovery is not proportional to the needs of the case. Plaintiff requests this discovery to show that the class members were not in Iran when they conducted credit transactions. However, Plaintiff concedes that technical restrictions on the use of credit cards from Iran would prevent any of these transactions from occurring if the accountholder were located in Iran, thus the occurrence of the credit transaction by itself indicates the card user was not located in Iran. Further, Defendant is

not contending that class members were in Iran when Defendant sent the proof of residency requirements. The cost of complying creates an undue burden on Defendant.

The Court finds there are less intrusive and costly ways of obtaining this discovery such as an interrogatory, a Rule 30(b)(6) witness, or a stipulation. Rule 26(b)(2) requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive.

### III. Conclusion

The discovery Plaintiff seeks in RFPs 6, 8, 9, and 41 is potentially relevant to Plaintiff's claims. Given the burden on the Defendant to produce this discovery, the Court finds a 10% random sample size to be sufficient and reasonable in light of the estimated class size indicated by Defendant if the figures were adjusted to also include Iranian-citizen Accountholders whose accounts were restricted but not closed. Thus, Defendant must produce the requested discovery in RFPs 6, 8, 9, and 41 for 10% of the FAC class. As regards Plaintiff's RFP 4, the Court finds the requested discovery is not proportional to the needs of the case.

**IT IS SO ORDERED**.

Dated:  March 20, 2023

Hon. Bernard G. Skomal
United States Magistrate Judge